GEORGE B. SANTANGELO
ATTORNEY & COUNSELOR AT LAW

THE TRINITY BUILDING
111 BROADWAY, SUITE 1000
NEW YORK, NY 10006

GLS@santangelo.ws
PHONE (212) 269-4488

108 BROOK STREET
SCARSDALE, NY 10583

PHONE (914) 472-5044

27 June 2011

Honorable Ruben Castillo
United States Judge
US District Court Northern District Illinois
219 South Dearborn, Room 2146
Chicago, IL 60604

Re: Vicente Zambada-Niebla

Dear Judge Castillo:

Please accept this letter in support of Vicente Zambada-Niebla's (Vicente) motion requesting that the Court make inquiry and hold a hearing to determine the purpose for the special conditions under which he is being held; whether that purpose is reasonable and, if so, whether the special conditions are reasonably related to the purpose. Vicente contends that the sum of the conditions under which he is being held in pre-trial detention violates the Due Process clause of the Fifth Amendment and the Eighth Amendment prohibition against cruel and unusual punishment.

Vicente has been in pre-trial detention at the Metropolitan Detention Center in Chicago, Illinois (MCC) since March 2010. He has been in the MCC's Special Housing Unit (SHU) where he occupies four cells, one at a time. This four cell section is set aside to keep him isolated and away from other inmates at SHU. He sleeps in a cell for two consecutive nights and then is required to move to one of the other three cells. Other inmates are required to move only once a month and only one cell is reserved for each inmate.

He is prohibited from speaking to any other inmates at any time and for any purpose. Vicente is prohibited from speaking to anyone except his counselor and those Bureau of Prisons (BOP) personnel above the rank of lieutenant. Neither his counselor nor BOP personnel above the rank of lieutenant are regularly on his floor at SHU.

GEORGE B. SANTOUCHI
ATTORNEY AT LAW

<u>Isolation of Vicente creates serious problems including but not limited to the following</u>:

a. Inmates at SHU receive their meal at regular times. Because only a lieutenant can have contact with Vicente (such as passing a meal tray to him through the slot at the door), Vicente has to wait for a lieutenant to come by and feed him. Instead of receiving meals as scheduled, he receives his meals one, two or three hours later, usually cold.

b. Mail is delivered to Vicente not even once a week, in fact, Vicente receives mail months late. Other inmates receive their mail as it is processed through the system. Mail is delivered to him by his counselor only; and only on Thursdays, if the counselor is available. So if his counselor does not come he does not receive mail. His family sends him mail almost every day yet he has gone without mail being delivered to him for a month at a time.

c. Although there is a designated person to check outgoing mail, guards on his floor have been reading his outgoing mail.

d. Only his counselor handles book exchanges. If Vicente runs out of reading material, he must wait for the counselor's visit to exchange reading material. If the counselor forgets to bring the books, he is out of luck.

e. Other inmates are allowed to make phone calls at the times they request and often up to the allowed 300 minutes per month. Vicente is limited to a call once a week. The call is made with the assistance of his counselor or another officer. The system often fails to make or drops the connection. When there is a problem with the call of other inmates at SHU, the call can be and is made again or replaced at another time so the inmate can have his call. In Vicente's case if a call is dropped, that is the call of the week. Vicente averages less than three calls per month.

f. In his cell he is provided with a thin mattress (standard issue), 3 blankets, 2 sheets, pillow with pillow case, a table with a small pull-out stool, toilet and wash basin.

g. He is allowed exercise by some of the lieutenants and not by others. Some allow him daily access to the area; others don't. It seems to be at the whim of the officer of the day. The exercise area is a 12 x 12 feet wire cage. He can walk around the area provided by the cage – small as it is, it is larger than the 10 x 3 feet area he can use to walk in his cell. In the exercise cage there is a stationary bike (it was recently repaired) and a pull-up bar.

h. In the entire period of his pre-trial detention he has not seen sunlight or breathed fresh air. In contrast he had outdoor exercise every day in a super maximum security facility in Mexico. No Vitamin D supplements are given to him.

i. The commissary privileges are very limited. The commissary does have a long list of items for sale to inmates but these are not allowed to Vicente. He is given a very short list. Simple things such as a soft drink or coloring pencils are prohibited to him.

ATTORNEY AT LAW

On April 14, 2011, counsel for Vicente wrote this Court about these conditions. None of the special conditions which we described then were alleviated except that Vicente is now allowed to visit with counsel without shackles or handcuffs; he is also no longer shackled when moved.

Subsequent to April 14, 2011, Vicente was visited by an attorney for the MCC who told him that he could order anything on the extended commissary list "because he is not being punished". However, pursuant to Lt. Silva's orders, the commissary list remains restricted.

No one else is treated as Vicente is. Other inmates in SHU have been placed there as punishment for violence or other misconduct. Vicente has complied with the rules in the institution. His pre-trial detention is far more onerous than that of detainees being punished for violence and infractions of the rules.

Vicente's glasses broke and he has not been able to replace them.

Vicente has made repeated requests for a medical examination because he suffers from chronic stomach problems. He has not received such an examination.

Counsel have observed Vicente throughout this pre-trial detention. He appears more and more anxious and depressed. His pallor is gray.

Requests have been made continually to alleviate these conditions without success.

Officials at the MCC have refused to tell us the reasons for the imposition of these onerous conditions.

Numerous studies (See, Testimony of Dr. Stuart Grassian, Commission on Safety and Abuse in American Prisons, Final Report, June 8, 2006) have documented the effects of solitary confinement on prisoners giving them the name; Special Housing Unit Syndrome or SHU Syndrome. Some of the many SHU Syndrome symptoms include:

- visual and auditory hallucinations

- hypersensitivity to noise and touch

- insomnia and paranoia

- uncontrollable feelings of rage and fear

- distortions of time and perception

- increased risk of suicide

3

- difficulty with thinking, concentration and memory

According to Dr. Terry A. Kupers, institute professor at The Wright Institute and author of "Prison Madness: The Mental Health Crisis Behind Bars and What We Must Do About It", one of the most stunning statistics in criminology today is that, on average, 50% of U.S. prisoner suicides happen among the 2% to 8% of prisoners who are in solitary confinement, also known as segregation. Solitary confinement breaks prisoners down and practically guarantees they will never function normally in society again. (Kupers testifies as a psychiatric expert in court about prison conditions and the quality of correctional mental health care. He received the exemplary psychiatrist award from the National Alliance on Mental Illness in 2005, and the William Rossiter Award from the Forensic Mental Health Association of California in 2009. He also submitted testimony before the Commission on Safety and Abuse, *supra*.)

Pre-trial detainees in federally operated custodial facilities are protected by the Fifth Amendment Due Process clause. Bell v. Wolfish, 441 U.S. 520 (1979) Special conditions not reasonably related to a legitimate objective of the custodial institution violate the Constitutional rights of the detainee. Hart v. Sheehan, 396 F.2d 887 (7th Cir. 2005) (Posner, J., pre-trial prisoner "has an interest in being free from gratuitously severe restraints and hazards", *supra*, at 892-93) The conditions under which Vicente is compelled to conduct his defense to the charges in the indictment are gratuitously and unreasonably severe.

The MCC is detaining Vicente pursuant to this Court's order. The MCC should justify those restraints and hazards or discontinue them.

Respectfully submitted,

_____
George L. Santangelo, Esq.

E. S. Panzer
_____
Edward S. Panzer, Esq.

/s/
_____
Alvin S. Michaelson, Esq.

/s/
_____
Fernando X. Gaxiola, Esq.

Attorneys for Vicente Zambada-Niebla

cc:   Thomas Shakeshaft
      Warden – MCC Chicago

4