UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 09CR383-3 |
| v. | ) | |
| | ) | Judge Ruben Castillo |
| JESUS VICENTE ZAMBADA-NIEBLA | ) | |

**DEFENDANT JESUS VICENTE ZAMBADA-NIEBLA'S
MOTION TO DISMISS THE SUPERSEDING INDICTMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

Defendant, Jesus Vicente Zambada-Niebla, respectfully submits the following

Motion to Dismiss the Superseding Indictment and Incorporated Memorandum of Law in

Support.

**STATEMENT OF FACTS**

Mr. Zambada-Niebla has recounted the relevant facts to this motion in greater

detail in his other motions, including his motion for discovery related to a public authority

defense.  In short, Humberto Loya Castro is a member of the Sinaloa cartel, and is an attorney

who in the late 1980s became an adviser and confidante of, *inter alia,* Mr. Zambada-Niebla,

Joaquin Guzman Loera  and Ismael Zambada Garcia, who are also charged here.

Beginning in or about 1998, Loya entered into an agreement with the United

States government through agents then of the Department of Justice, including the Immigration

and Naturalization Service, (now, Department of Homeland Security, Immigration and Customs

Enforcement ("ICE")) and the Department of Justice, Drug Enforcement Administration

1

("DEA"). Under the agreement Loya was to provide information to the government, particularly about rival cartels, in return for immunity for Loya's prior acts and continuing acts. Loya understood that this agreement was known and approved by attorneys in the Department of Justice and the leaders of the Sinaloa Cartel.

In exchange for the information he provided, Loya was promised immunity for past and future activities involving the Sinaloa Cartel and that a federal indictment against him in San Diego would be dismissed. Indeed, in December of 2008, the case against Loya in San Diego was dismissed, representing the government's fulfillment of its commitment to furnish transactional immunity. Nor has Loya been prosecuted for anything since that time.

Mr. Zambada-Niebla was party to the agreement between the United States government, through its officials, and the Sinaloa Cartel through Loya. Defendant had provided information that Loya transmitted to the government. Like Loya, he too was under indictment and the agreement contemplated that defendant would receive immunity as it did with Loya.

In 2008, Loya advised the government that Mr. Zambada-Niebla was going henceforth to take the role of primary liaison on behalf of the Sinaloa Cartel with the United States government. A meeting took place in Mexico City between Loya and Mr. Zambada-Niebla on the one hand, and DEA agents from Washington and Mexico on the other. By the time of this meeting, the DEA had been investigating the case that gave rise to this indictment for at least eight months. A DEA agent named "Manny" [last name unknown] who had interacted extensively with Loya was there. Also present was a DEA agent named David and both agents made clear that they were there with the approval of attorneys in the Department of Justice in

2

Washington.  Other Washington-based DEA agents were also in the hotel where the meeting took place.

At this meeting, Mr. Zambada-Niebla gave additional information.   Attendance at the meeting exposed him to the danger of physical harm from others, including Mexican authorities.  In addition, by traveling to Mexico City, Mr. Zambada-Niebla risked arrest by Mexican authorities.

It was made clear that the existing agreement with the United States that covered Loya and Mr. Zambada-Niebla – *i.e.* that defendant was immunized for his actions – remained in place and would continue.  Defendant was specifically told that he would receive immunity, not only under Loya's prior agreement, but as an agreement with him personally and approved at the highest levels of the government.  As further indication of the agreement that was in place, even though defendant had a federal warrant issued for his arrest and was physically in the presence of DEA agents, he was not arrested or detained in any way, but rather, was allowed freely to leave the hotel where the meeting took place.

Mr. Zambada-Niebla was subsequently arrested by Mexican authorities and placed in extradition proceedings.  During the proceedings, the United States never informed Mexico of the arrangements that it had made with Mr. Zambada-Niebla and the Sinaloa cartel.

**<u>ARGUMENT</u>**

Mr. Zambada-Niebla contends that the superseding indictment should be dismissed for two reasons.  First, this prosecution should be terminated because the government violated Mr. Zambada-Niebla's due process rights when it uprooted him from Mexico pursuant to an extradition request that failed to disclose a plethora of exculpatory information.  Second,

3

Mr. Zambada-Niebla was extradited pursuant to the original indictment, not the superseding indictment, which seeks to expand the charges in violation of the rule of specialty. Before addressing these two contentions, Mr. Zambada-Niebla will address the government's anticipated argument that he lacks "standing" to bring these claims.

### A. Mr. Zambada Has "Standing" To Bring This Motion To Dismiss

The federal courts of appeals have issued conflicting opinions on whether a criminal defendant has "standing" to raise defenses based on violations of an extradition treaty, such as violations of the doctrine of specialty. The majority rule is that a criminal defendant can raise such challenges. *See United States v. Puentes*, 50 F.3d 1567, 1571-75 (11th Cir. 1995); *United States v. Levy*, 905 F.2d 326, 328 n.1 (10th Cir. 1990); *United States v. Thirion*, 813 F.2d 146, 151 n.5 (8th Cir. 1987); *see also United States v. Saccoccia*, 58 F.3d 754, 767 n.6 (1st Cir. 1995). The Seventh Circuit has previously taken the minority view that a defendant lacks "standing" and that only the sending State can object to extradition treaty violations. *See Matta-Ballesteros v. Henman*, 896 F.2d 255, 259 (7th Cir. 1990). For three reasons, this Court should conclude that Mr. Zambada-Niebla has standing.

First, *Matta-Ballesteros* was decided before *United States v. Alvarez-Machain*, 504 U.S. 655 (1992). In *Alvarez-Machain*, the Supreme Court emphasized that the rule of specialty may be invoked by an individual defendant and that "a court must enforce it on behalf of an individual regardless of the offensiveness of the practice of one nation to the other nation." *Id.* at 667. Indeed, writing for the Court, former Chief Justice Rehnquist explained that, in the landmark case of *United States v. Rauscher*, 119 U.S. 407 (1886), "no importance was attached to whether or not Great Britain had protested the prosecution of Rauscher for the crime of cruel

4

and unusual punishment as opposed to murder." *Id.* at 667. Although the Seventh Circuit has, in more recent years, simply restated the *Matta-Ballesteros* rule, *see United States v. Jordan*, 223 F.3d 676, 693 (7th Cir. 2000), it has never addressed *Alvarez-Machain*.

Second, the Supreme Court's recent opinion in *Bond v. United States*, 131 S. Ct. 2355 (2011) also undermines the validity of the *Matta-Ballesteros* rule. In *Bond*, the defendant sought to challenge the constitutionality of a federal criminal statute, enacted pursuant to an international treaty, on the grounds that the statute impermissibly encroached on the States' general police power in violation of the Tenth Amendment. The lower court in *Bond* had determined that the defendant did not have standing, reasoning that only the States could assert such a challenge. The Supreme Court reversed, explaining that the Tenth Amendment also protects an individual's rights, and therefore a criminal defendant does have "standing" to raise such a claim, which "need not depend on the vicarious assertion of State's constitutional interests, even if a State's constitutional interests are also implicated." *Bond*, 131 S. Ct. at 2365. Similarly, extradition doctrines, such as specialty and dual criminality, also protect an individual defendant's rights, and therefore an individual defendant has "standing" to raise such claims without depending on the sending State's assertion of a treaty violation.

Finally, even putting aside this Supreme Court authority, it is clear that Mr. Zambada-Niebla has standing to assert the first contention raised below, as he is claiming that the government violated the Due Process Clause, not simply an extradition treaty, when it failed to disclose exculpatory information during the extradition proceedings, a claim for which he clearly has standing. Thus, this Court can at least entertain the merits of this claim. In any event, as set forth above, this Court should entertain the merits of both claims.

### B.  The Government Violated *Brady* During The Extradition Proceedings

In *Demjanjuk v. Petrovsky*, 10 F.3d 338, 353 (6th Cir. 1993), the Sixth Circuit held that *Brady v. Maryland*, 373 U.S. 83 (1963) applies to extradition proceedings.  There can be little doubt that information demonstrating that Mr. Zambada-Niebla was granted immunity, in whatever form, constitutes exculpatory evidence.  The same applies to information supporting a public authority defense.  *See United States v. Jumah*, 599 F.3d 799 (7th Cir. 2010) (government complied with *Brady* because it had searched its files for any information supporting defendant's public authority defense).

It is also important to emphasize that *Brady* applies to discretionary decisions, such as sentencing.  *See,e.g.*, *United States v. Severson*, 3 F.3d 1005, 1013 (7th Cir. 1993).  Thus, even if information regarding immunity and public authority did not demonstrate that Mr. Zambada-Niebla was factually innocent, it still should have been disclosed if it could have influenced Mexico's decision to extradite.  Much like sentencing, a sending State's decision to extradite is a discretionary one.  Indeed, Article 9 of the Extradition Treaty between the United States and Mexico ("the Treaty") specifically provides that "[n]either Contracting Party shall be bound to deliver up its own nationals, but the executive authority of the requested Party shall, if not prevented by the laws of that Party, have the power to deliver them up if, in its discretion, it be deemed proper to do so."  Certainly, in deciding whether to grant extradition, Mexico would have wanted to consider whether one of its citizens had been granted some form of immunity by the United States or had otherwise been given some form of authorization to engage in the conduct for which his extradition was sought.

By failing to disclose such information during the extradition proceedings, the government violated Mr. Zambada-Niebla's due process rights. Typically, the remedy for a *Brady* violation is a new trial or a new sentencing hearing, depending on the context in which the violation occurred. Here, the government can only proceed against Mr. Zambada-Niebla if he has been properly extradited. Accordingly, the appropriate remedy is dismissal of the indictment and entry of an order requiring Mr. Zambada-Niebla's return to Mexico. The government can then decide whether it would seek a new indictment and again seek his extradition, this time making the appropriate disclosures during the extradition proceedings.

### C. Mr. Zambada Was Not Extradited On The Superseding Indictment

On April 23, 2009, an original indictment was filed charging Mr. Zambada-Niebla with two conspiracy charges. The original indictment contains little factual particularity, and the grand jury transcripts underlying the original indictment have not been disclosed. Mr. Zambada-Niebla was extradited on this original indictment. The government has filed a superseding indictment, containing numerous and additional allegations. Because the grand jury transcripts underlying the original indictment have not been disclosed, it is not clear whether the grand jury's original findings included the allegations made in the superseding indictment.

"[T]he doctrine of 'specialty' prohibits the requesting nation from prosecuting the extradited individual for any offense other than that for which the surrendering state agreed to extradite." *United States v. Khan*, 993 F.2d 1368, 1373 (9th Cir. 1993) (citation omitted). The doctrine of specialty is embodied in Article 17 of the Treaty, which provides that a "person extradited under the present Treaty shall not be detained, tried or punished in the territory of the requesting Party for an offense other than that for which extradition has been granted . . . ."

7

Thus, the government should only be allowed to proceed under the conspiracy charges as found

by the original grand jury. Accordingly, the Court should dismiss the superseding indictment and

order the government to disclose the grand jury transcripts underlying the original indictment, *see*

Fed. R. Crim. P. 6(e)(3)(E), so that the scope of the conspiracy charges in the original indictment

can be ascertained, and the trial can proceed on the basis of those charges.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Mr. Zambada-Niebla's motion

to dismiss the superseding indictment.

Respectfully submitted,


/s/Edward S. Panzer

Dated: July 29, 2011             EDWARD S. PANZER
                                 GEORGE L. SANTANGELO
                                 111 Broadway, Suite 1100
                                 New York, NY 10006
                                 (212) 269-4488
                                 panzer2@rcn.com
                                 glslegal@yahoo.com

                                 ALVIN S. MICHAELSON
                                 1901 Avenue of the Stars, Suite 615
                                 Los Angeles, CA 90067-6018
                                 (310) 300-1101
                                 alvinlaw@gmail.com

                                 FERNANDO X. GAXIOLA
                                 3710 South 6th Avenue, Suite 3
                                 Tucson, AZ 85713
                                 fernando_gaxiola@hotmail.com

## CERTIFICATE OF SERVICE

The undersigned counsel for defendant Vicente Jesus Zambada-Niebla certifies in accordance with Fed. R. Crim P. 49, Fed. R. Civ. P. 5, LR 5.5 and the General Order on Electronic Case Filing (ECF), the attached Motion To Dismiss and Incorporated Memorandum of Law was, on July 29, 2011, served pursuant to the district court's ECF system as to ECF filers:

Thomas D. Shakeshaft
Assistant U.S. Attorney
United States Attorney's Office, N.D. Ill.
219 S. Dearborn Street
Chicago, IL 60604

Counsel for the Government

Gal Pissetzky
Pissetzky & Berliner
53 West Jackson Boulevard
Suite 1403
Chicago, IL 60604
(312) 566-9900
Email: gpissetzky@comcast.net

Counsel for Tomas Arevalo-Renteria

/s/ Edward S. Panzer
EDWARD S. PANZER
111 Broadway, Suite 1000
New York, New York 10006
(212) 514-5335
Panzer2@rcn.com

9