UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. 09 CR 383 |
| | ) |
| | ) Judge Ruben Castillo |
| v. | ) |
| VICENTE JESUS ZAMBADA-NIEBLA, | ) |
| | ) |
| _____ | ) |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PRETRIAL DISCOVERY**

Defendant, Vicente Jesus Zambada-Niebla, submits this memorandum of law in

support of his Motion for Pretrial Discovery and for an order directing the government to

produce for inspection, copying, and photographing, each of the items listed below.

**1.    Statements by Defendant**

Mr. Zambada-Niebla seeks discovery of written, recorded, and oral statements

made by him which are relevant to this case.  Disclosure of these statements is required

by Rule 16(a)(1)(A) of the Federal Rules of Criminal Procedure, which provides:  "Upon

a defendant's request, the government must disclose to the defendant the substance of any

relevant oral statement made by the defendant, before or after arrest, in response to

interrogation by a person the defendant knew was a government agent if the government

intends to use the statement at trial."

Mr. Zambada-Niebla requests the production of any and all reports, notes, memos

and statements from officers and the prosecution pertaining to him.  This request includes

any *Bruton* statements of co-conspirators.  Furthermore, by its terms, Rule 16 requires

disclosure of all audiotapes that contain relevant statements of the defendant.  *See United*

*States v. Haldeman*, 559 F.2d 31, 75, n.80 (D.C. Cir. 1976). This request includes and is

not limited to any rough notes, records, reports, transcripts, or other documents in which

statements of Mr. Zambada-Niebla are contained. It also includes the substance of any

oral statements which the government intends to introduce at trial. *United States v.*

*McElroy*, 697 F.2d 459 (2d Cir. 1982).

      A defendant's written or recorded statements are producible under Rule

16(a)(1)(B) whether or not the statements were made to a government agent. *United*

*States v. Scafe*, 822 F.2d 928, 936 (10th Cir. 1987); *United States v. Caldwell*, 543 F.2d

1333, 1352 (D.C. Cir. 1975). For purposes of Rule 16(a)(1)(B), a statement is deemed to

be "within the possession, custody or control of the government" if it is in the possession

of an investigative agency; direct physical possession by the prosecuting attorney is not

required. *United States v. Bailleaux*, 685 F.2d 1105, 1113 (9th Cir. 1982). Mr. Zambada-

Niebla also requests any response to any *Miranda* warnings which may have been given

to him. *See United States v. Elroy*, 697 F.2d 459 (2nd Cir. 1982).

      The Ninth Circuit has held that a defendant's written or recorded statements must

be disclosed regardless of whether the government intends to offer them into evidence at

trial. In *Bailleaux*, the defendant claimed error based upon the government's introduction

of a tape-recorded conversation, which was not disclosed during discovery, that was

played during cross-examination of the defendant to impeach his direct testimony. In

concluding that Rule 16 was violated, the court rejected the government's argument that

it should not be required to anticipate defenses and determine in advance of trial whether

a defendant's statement has potential impeachment value:

      "Rule 16 can fully serve its intended purpose only if the government takes a broad
      view of what is relevant for purposes of that provision. We believe the

> government should disclose any statement made by the defendant that may be
> relevant to any possible defense or contention that the defendant might
> assert...Ordinarily, a statement made by the defendant during the course of the
> investigation of the crime charged should be presumed to be subject to disclosure,
> unless it is clear that the statement cannot be relevant. When the government is in
> doubt, the written or recorded statement should be disclosed, if a proper request is
> made."

*Bailleaux*, 685 F.2d at 1114. Other circuits have interpreted Rule 16 in the same manner.

*See, e.g.*, *United States v. Scafe*, 822 F.2d 928, 935 (10th Cir. 1987); *United States v.*

*Noe*, 821 F.2d 604, 606-09 (11th Cir. 1987). A statement written or signed by the

defendant need not be made or addressed to any agent of the government or intended for

viewing by the government; any document written or signed by the defendant which is

relevant to the crimes charged is discoverable. *United States v. Caldwell*, 543 F.2d 1333,

1352 n.93 (D.C. Cir. 1975).

Rule 16 was amended in 1991 to require disclosure of any written record which

contains reference to a relevant oral statement made by the defendant in response to

interrogation. As the Advisory Committee Note explains, disclosure of such a statement

is required whether or not the government intends to use the statement at trial. The Note

further explains that "[t]he written record need not be a transcription or summary of the

defendant's statement but must only be some written reference which would provide

some means for the prosecution and defense to identify the statement." The 1991

amendment also changed the prosecution's duty with respect to a defendant's oral

statements in response to interrogation. The Advisory Committee Note explains:

> "Under the amendment, the prosecution must also disclose any relevant oral
> statement which it intends to use at trial, without regard to whether it intends to
> introduce the statement. Thus, an oral statement by the defendant which would
> only be used for impeachment would be covered by the rule."

*See United States v. Ferrer-Cruz*, 899 F.2d 135, 140 (1st Cir. 1990) (oral statements clause of Rule 16 includes statements the government will introduce in rebuttal). A defendant's statement need not amount to a confession or admission of guilt to be subject to production under Rule 16. Regardless of whether the statement is inculpatory, exculpatory, or neutral, it must be produced if it is relevant to the offenses charged in the indictment. *United States v. Manettea,* 551 F.2d 1352, 1356 (5th Cir. 1977).

### 2. Documents and Physical Evidence

Mr. Zambada-Niebla requests production of documents and other tangible objects. These requests are governed by Rule 16(a)(1)(E), which provides:

> "Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant ."

Rule 16(a)(1)(E) requires production of documents "in the hands of the prosecutor, any investigative unit under the prosecutor's control, and any other federal agency allied with the prosecution or involved in the prosecution of criminal litigation." *United States v. Poindexter*, 727 F. Supp. 1470, 1477 (D. D.C. 1989). *See also United States v. Haldeman*, 559 F.2d 31, 73-4 (D.C. Cir. 1976). Documents in the possession of federal agencies which did not take part in the investigation are subject to production under Rule 16(a)(1)(E) if the prosecutor has knowledge or access to the documents. *See, e.g.*, *United States v. Santiago*, 46 F.3d 885 (9th Cir. 1995); *United States v. Jackson*, 850 F. Supp. 1481, 1502 (D. Kan. 1994). In this case, it is critical that where more than one agency is involved and the scope of law enforcement activity is broad, that the

4

government actively seek documents and evidence relating to the investigation and

prosecution of this case from additional sources.  Indeed, the Ninth Circuit has stated:

> "[T]he scope of the government's obligation under Rule 16(a)(1)(E) should turn on the extent to which the prosecutor has knowledge of any access to the documents sought by the defendant in each case.  The prosecutor will be deemed to have knowledge of and access to anything in the possession, custody, or control of any federal agency participating in the same investigation of the defendant...

*United States v. Bryan*, 868 F.2d 1032, 1036-37 (9th Cir. 1989).

Under Rule 16(a)(1)(E), the defense is entitled to out-of-district documents in the

possession of investigating agencies closely connected to the prosecution. As the court

observed in *Bryan*, "[n]othing in the text of Rule 16(a)(1)(C) suggests that the

government's obligation...is satisfied by turning over only those documents physically

located within the district in which the defendant is tried." *Id.* at 1036.  The indictment in

this case is directly related to investigative activity by federal, state, local, and Mexican

law enforcement agencies.  All of the acts allegedly committed by Mr. Zambada-Niebla

took place in Mexico.  There is no question that allegations of drug trafficking has

attracted the attention of the government on many levels and in many places.  The

government must be encouraged to determine what it knows about this case and disclose

all that it is required to under Rule 16 and *Brady* as promptly as possible. *See United

States Attorney Northern District of Illinois Office Policy Regarding Discovery in

Criminal Cases (Exhibit B)*.  Accordingly, the government's disclosure obligation under

Rule 16(a)(1)(E) should, at a minimum, cover relevant documents and other tangible

items in the possession of governmental agencies, including those in Mexico.

Discovery under Rule 16(a)(1)(E) is not limited to documents which will be

marked and offered in evidence.  As the court observed in *United States v. Turkish*, 458

F. Supp. 874, 882 (S.D.N.Y. 1978): "This phrase [intended for use by the government as evidence in chief at the trial] has been sensibly interpreted to include not only 'documents which will be marked and offered in evidence by the government,' but also documents 'which will be relied on or referred to in any way by any witness called by the government during its case in chief."

Cases interpreting Rule 16(a)(1)(E) recognize the court's authority to enter an order requiring the government to identify the specific documents it will use at trial. *See, e.g.*, *Poindexter*, 727 F. Supp. 1484 (ordering the government to identify specific documents it would seek to introduce in its case in chief or which its witnesses would rely upon during their testimony); *Turkish*, 458 F. Supp. 882 (granting request for an order directing the government to identify which of the approximately 25,000 case-related documents in its possession it would use at trial).

In *United States v. George*, 786 F. Supp. 11, 13 (D. D.C. 1991), the court examined the "material to the preparation of the defense" clause of Rule 16:

> "[T]he documents need not directly relate to the defendant's guilt or innocence. Rather, they simply must play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony or assisting impeachment."

*Accord United States v. Lloyd*, 992 F.2d 348, 350-51 (D.C. Cir. 1993). The court in *United States v. Stever* 603 F.3d 747 (9th Cir. 2010) held that the defendant was prevented from making his defense because the government refused to turn over documents that it did not deny it possessed relating to Mexican drug growing operations. The defendant sought discovery of any reports describing the "characteristics, modus operandi, and other information regarding" Mexican operations involved in growing marijuana, explaining that he had knowledge that the prosecution had filed a number of factually

similar marijuana cases involving such organizations. The government refused to comply with the request. The Court concluded that Stevers' Sixth Amendment rights were violated because he was prevented from presenting a defense based on documents and undisclosed reports that were prepared by law enforcement in their fight against such organizations. Request #28 asks for information in the possession, custody, or control of the government relating to the modus operandi, structure, means of transportation, training, and membership of the Sinaloa Cartel. Mr. Zambada-Niebla is alleged to be a leader of the Sinaloa Cartel and the coordinator of distribution for that organization. As such, the materials requested are relevant and could play an important role in uncovering admissible evidence, corroborating testimony, and assisting impeachment.

The government has admitted on numerous occasion in open court that the evidence in this case is "quite a bit" and "multi-jurisdictional" (e.g. RT February 23, 2010, p.4). The government also has admitted that a significant amount of information the defense team requested, does not necessarily lie within the Department of Justice or within the Northern District of Illinois (RT November 10, 2010, p.5). While the government was hopeful it would provide the Court and the defense by December 15, 2010 with a status as to the results of those efforts (RT November 10, 2010, p.5), the only status provided was that progress and further investigation was still being sought. A few months later, the government indicated to this Court that even if it were to comply in a "conservative way" with the defenses discovery request, the number of files would include "over 100 offices both domestically and abroad," indicating that there may be discoverable information in the hands of other international agencies (RT January 26, 2011, p.4). The government has also objected to many of the defense's requests for

7

discovery on grounds of materiality and relevance. It is respectfully submitted that it is clear from statements made by the government in open court and from the conversations Mr. Zambada-Niebla has had in multiple meetings with prosecutors and the information set forth herein that there is sufficient justification for the discovery requested.

A defendant's right to present a defense-whether grounded in the Fifth Amendment's Due Process Clause or the Sixth Amendment's Compulsory Process Clause-"includes, 'at a minimum,...the right to put before a jury evidence that might influence the determination of guilt.'" *Stever*, 603 F.3d at 755 (quoting *Pennsylvania v. Ritchie,* 480 U.S. 39, 56 (1987)). This Court also indicated during a hearing held on November 10, 2010, that it would be unfair to give the defense notice of Federal Rules of Evidence Rule 404(b) evidence and to provide the defense with the Santiago proffer thirty days prior to trial because the defense would have inadequate time to investigate a matter in two different countries (RT November 10, 2010, p.12). Due to the complex nature of the case and the fact that investigations will be required in at least two different countries, it is only fair that the government provide the relevant information forthwith.

The Memorandum For Department Prosecutors dated January 4, 2010 (also known as the "Ogden Memorandum") (Exhibit A), directs that witness interviews, prosecutor notes, and original recordings be memorialized by the agent. In addition, a prosecutor should not begin an interview without an agent present to avoid the risk of making themselves a witness to a statement and being disqualified from the case if the statement becomes an issue. If a prosecutor receives discoverable information, including and not limited to emails, video surveillance, audio surveillance, and notes, this too should be disclosed.

### 3. Percipient Witnesses

Mr. Zambada-Niebla seeks the name, address, and telephone number of each person having material information regarding any of the acts or transactions giving rise to the offenses charged. This includes persons who, for whatever reason, will not be called as witnesses by the government. In *United States v. Cadet*, 727 F.2d 1453, 1469 (9th Cir. 1984), the court expressly approved this form of pretrial discovery:

> [Appellants] sought the names and addresses of witnesses to the 'actions' or 'offenses' charged in the indictment. A person who has actually witnessed a crime through any of his senses can either provide evidence which is favorable to the defense or which may tend to raise a reasonable doubt that the accused is guilty. Thus, it was quite appropriate for the district court to conclude from the fact that the government did not intend to call a witness to the crime that there was a reasonable possibility that such person would be able to provide evidence favorable to the defense. No further showing of materiality was required. The government offered no evidence to rebut this logical inference. No legitimate governmental interest has been suggested which would justify denying to the accused the identity of a witness to a crime whose testimony may be exculpatory. 'Witnesses, particularly eye witnesses to a crime, are the property of neither the prosecution nor the defense. Both sides have an equal right and should have an equal opportunity to interview them'...Thus, the district court's order compelling disclosure of the names and addresses of such witnesses did not constitute abuse of discretion."

### 4. Witness List and Statements

Mr. Zambada-Niebla asks for a witness list and all witness statements. Although there is no right to a witness list in a non-capital case, it is clear that the court has discretion to order production of such a list in appropriate cases. *See, e.g., United States v. Jackson*, 508 F.2d 1001, 1005-07 (7th Cir. 1975); *United States v. Richter*, 488 F.2d 170, 173-75 (9th Cir. 1973). In exercising its discretion, the court should consider factors as the needs of the defense in preparing for trial, the nature of the case and the likelihood of witness intimidation. *United States v. Esquivel*, 755 F.Supp. 434, 437 (D. D.C. 1990).

Advance disclosure of the government's witnesses will enable defense counsel to conduct pretrial interviews, to develop information on each witness's reputation for honesty, and to perform other necessary investigative work. *See United States v. Palmisano*, 273 F. Supp. 750, 752 (E.D. Pa. 1967) (recognizing court's "traditional and important discretion to require limited disclosure of the identity of persons in non-capital cases where such disclosure is essential to give the defendant a fair opportunity to prepare his defense").

It is critical that the government produce all § 3500 and Rule 16 material to defense counsel as promptly as feasible after arraignment in order to give defense counsel adequate time to review the material, evaluate it with his or her client, and be prepared for trial, without using court time. In its first discovery letter dated May 21, 2010, the government provided limited and heavily-redacted discovery pledging that it would be the "first of several productions of documents" and that further discovery would proceed on a "rolling basis." (The letter also stated that the government had no *Brady* material to disclose). Since that time, however, defense counsel has received only very limited discovery, consisting primarily of previously produced documents with redactions. In his response to the government's Motion To Delay Discovery dated November 8, 2011, Mr. Zambada-Niebla has once again asked the government to provide him with additional discovery materials which the government assured him it would provide; however, no such discovery has yet to have been received. Each time Mr. Zambada-Niebla has requested outstanding discovery, the government continues to respond by indicating that it will provide such information at some future time and "is continuing to inquire various agencies of the U.S. government regarding any materials related to the

superseding indictment in this case that require disclosure" (*See Letter from United States Attorney's Office*, *May 21, 2010, p.4; Defense Exhibit C*).

Moreover, it is the United States Attorney's Office ordinary practice to disclose *Brady* information as soon as practicable (*See United States Attorney's Office Policy Regarding Discovery in Criminal Cases for the Northern District of Illinois, October 18, 2010; Defense Exhibit B*) as well as any and all Rule 16 material prior to arraignment. The government has a duty to provide all evidence favorable to the accused where the evidence is material either to guilt or punishment as well as an ongoing duty to learn of any favorable evidence known to others acting on the government's behalf.

Mr. Zambada-Niebla also requests that all law enforcement agents who participated in the investigation be directed to retain all rough notes of witness interviews and surveillance activity, so that the court can determine if these notes are subject to production under the Jencks Act. Retention of rough notes is required under *United States v. Harris*, 543 F.2d 1247 (9th Cir. 1976). In *Harris*, the court condemned the FBI's practice of destroying rough interview notes taken by agents. The court held that interview notes must be preserved because they are potentially discoverable under the Jencks Act and Rule 16 of the Federal Rules of Criminal Procedure:

> "We reiterate our holding...that the FBI must hereafter preserve the original notes taken by agents during interviews with prospective government witnesses or with an accused. The preservation of such evidence is necessary in order to permit courts to play their proper role in determining what evidence must be produced pursuant to the Jencks Act or other applicable law."

*Harris*, 543 F.2d at 1253. *Accord United States v. Layton*, 564 F. Supp. 1391, 1393 (D. Ore. 1983) ("The court, rather than the government, must decide whether rough notes of an interview of a witness constitute a Jencks Act statement."). In the same vain, any

audio or video of witness interviews should also be preserved.  Additionally, per the Ogden Memorandum, prosecutors are urged to memorialize any and all witness interviews as well as any and all agent and prosecutorial notes and/or recordings.

### 5.  Results of Scientific Tests

Defendant seeks disclosure of scientific tests conducted by the government during the course of the investigation in this case.  Such discovery is grounded in Rule 16(a)(1)(F), which provides:  "Upon a defendant's request, the government must permit a defendant to inspect and to copy or photograph the results or reports of any physical or mental examination and of any scientific test or experiment if: (I) the item is within the government's possession, custody, or control; (ii) the attorney for the government knows-or through due diligence could know-that the item exists; and (iii) the item is material to preparing the defense or the government intends to use the item in its case-in-chief at trial."  This request includes all results or reports of scientific tests or experiments that are material to the preparation of the defense, including the opinions, analysis, and conclusions of experts consulted by law enforcement.

### 6. Photographic Identification & Procedures

Relevant videotapes and surveillance photographs of Mr. Zambada-Niebla are also subject to discovery under Rule 16(a)(1)(E) as "photographs, tangible objects...within the possession, custody, or control of the government, and...is material to preparing the defense."  Photospreads and other photographs used to make pretrial identifications are discoverable.  *United States v. Samalot-Perez*, 767 F.2d 1, 4 (1st Cir. 1985).  The discovery of electronic surveillance evidence must be made in accord not only with the wiretap statutes, but also with the Federal Rules of Criminal Procedure.

Electronic surveillance reports will often be in the form of audio tapes, videotapes, photographs, or written recordings of statements. As such, they become discoverable. *See Alderman v. United States*, 394 U.S. 165, 181 (1969).

      If United States authorities substantially participated in a parallel foreign investigation, or if the foreign agents were acting as agents for their American counterparts, any discovery generated by the foreign government would also be subject to disclosure, and the exclusionary rule can apply to the admission of foreign evidence. *United States v. Maturo*, 982 F.2d 57, 61 (2d Cir. 1992); *United States v. Bin Laden*, 132 F. Supp. 2d 168, 185-88 (S.D.N.Y. 2001); *United States v. Behety*, 32 F.3d 503, 510 (11th Cir. 1994). In this case, all of the acts allegedly committed by Mr. Zambada-Niebla took place in Mexico. Because the government has not provided any such foreign discovery, the defense is thwarted in its ability to assess the import of such evidence and to determine the appropriateness of any Fourth or Fifth Amendment challenges.

### 7. Identity of Confidential Informants

It is well established that where an informant's testimony may be "relevant and helpful to the defense of an accused," his identity must be disclosed. *Rovario v. United States*, 353 U.S. 53, 60-61 (1957). Under *Rovario*, there is no fixed rule with respect to disclosure of a confidential informant, although four considerations are relevant: (1) the crime charged; (2) the possible offenses; (3) the possible significance of the informant's testimony; and (4) other relevant factors. *Id.* at 62-64. In a case such as this, the testimony of all informants are critical. Even if the informant may not be called to testify for the government, the defense may call them. *See Lopez-Hernandez v. United States*, 394 F.2d 820 (9th Cir. 1968); *Velarde-Villarreal v. United States*, 354 F.2d 9 (9th Cir.

1965). Here, there are informants and cooperating witnesses who were percipient witnesses; therefore, under *Rovario*, *Velarde-Villarreal*, and *Lopez-Hernandez*, the identity and whereabouts of such individuals must be revealed to the defense.

The government's obligation is not fully satisfied by merely disclosing the identity and location of confidential informants. Mr. Zambada-Niebla specifically requests that the informants be produced. The government has the duty to produce the informants or to show that, despite reasonable efforts, it was not able to do so. *United States v. Hart*, 546 F.2d 798, 799 (9th Cir. 1976). Mr. Zambada-Niebla respectfully requests that the Court permit defense counsel to question the informants before trial. Mr. Zambada-Niebla should also be permitted to interview the informants well in advance of trial. *See United States v. Hernandez*, 608 F.2d 741 (9th Cir. 1979); *United States v. Bower*, 575 F.2d 499 (5th Cir. 1978).

In *Callahan v. United States*, 371 F.2d 658 (9th Cir. 1967), the court held that both the defense and the prosecution had the right to interview witnesses before trial, and that exceptions to such rules were justifiable only by the clearest and most compelling circumstances. It is beyond dispute that witnesses to a crime are the property of neither the prosecution nor the defense, and that both sides have an equal right and should have an equal opportunity to interview them. Thus, the government is required to disclose the identity of all cooperating witnesses and their whereabouts, and to make them available for the defense. Failure to do so would require dismissal of the case.

This Court has considerable discretion in deciding whether an in camera hearing is necessary in determining when the government must release the informant's name and whereabouts. *See, e.g.*, *United States v. Ordonez*, 722 F.2d 530, 540-41 (9th Cir. 1983);

14

*United States v. Rawlinson*, 487 F.2d 5, 7-8 n.4 (9th Cir. 1973).  The *Rawlinson* court held that an in camera hearing was an appropriate means for determining whether the informant's identity and testimony would be relevant and helpful to the defense.  In *Ordonez*, the court stated that ["t]o insure that the informer is subject to a vigorous or searching examination, some trial courts have permitted the defense counsel to submit a set of questions to be propounded by the court." 722 F.2d at 541.  Further, the court held that the "procedure selected by the trial court should provide a substantial equivalent to the rights available to a criminal defendant under the Fifth and Sixth Amendments." *Id.* at 540-41.  Mr. Zambada-Niebla requests the opportunity to interview any informants sufficiently in advance of trial so that any further investigation that may be necessary may be accomplished without interrupting the trial.  Thus, the identity of the informants should be revealed well in advance of trial, or in the alternative, this Court should conduct an in camera hearing and allow defense counsel to participate in order to determine whether the informants' testimony is helpful and material to the defense.

## CONCLUSION

For the foregoing reasons, Mr. Zambada-Niebla's Motion for Pretrial Discovery should be granted as requested.


Dated: July 29, 2011                    Respectfully submitted,

                                        /s/ Alvin S. Michaelson
                                        ALVIN. S. MICHAELSON
                                        1901 Avenue of the Stars, Suite 615
                                        Los Angeles, California 90067-6098
                                        (310) 278-4984
                                        Michaelsonlaw@justice.com

<u>CERTIFICATE OF SERVICE</u>

The undersigned counsel for defendant Vicente Jesus Zambada-Niebla certifies in accordance with Fed. R. Crim P. 49, Fed. R. Civ. P. 5, LR 5.5 and the General Order on Electronic Case Filing (ECF), the attached Memorandum of Points and Authorities in Support of Motion for Pretrial Discovery was, on July 29, 2011, served pursuant to the district court's ECF system as to ECF filers:

Thomas D. Shakeshaft
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604

John R. DeLeon
Law Offices of John R. DeLeon
53 West Jackson Boulevard, Suite 1430
Chicago, Illinois 60604

<u>/s/ Alvin S. Michaelson</u>
ALVIN. S. MICHAELSON
1901 Avenue of the Stars, Suite 615
Los Angeles, California 90067-6098
(310) 278-4984
Michaelsonlaw@justice.com