UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 09 CR 383-3 |
| | ) | |
| JESUS VICENTE ZAMBADA-NIEBLA, | ) | |
| | ) | Judge Ruben Castillo |
| a/k/a "Vicente Zambada-Niebla," | ) | |
| a/k/a "Vicente Zambada," | ) | |
| a/k/a "Mayito," | ) | |
| a/k/a "30" | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR
DISCOVERY REGARDING DEFENSE OF PUBLIC AUTHORITY**

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, provides the following response to defendant's "Motion for Discovery Regarding Defense of Public Authority."

**INTRODUCTION**

Defendant has filed a motion and supporting memorandum of law seeking the production of discovery that he asserts to be relevant to his related defenses based on immunity, public authority, and entrapment by estoppel, R. 93, 94. Defendant alleges that he is entitled to discovery regarding a claimed agreement in which defendant, as well as the entirety of the Sinaloa Cartel, were given immunity and public authority for their criminal actions in exchange for providing information on rival cartels. In particular, defendant seeks vast amounts of information purportedly related to: (1) the cooperation of a DEA confidential source which ultimately culminated in the dismissal without prejudice of the confidential source's pending indictment in the Southern District of California; (2) other unidentified, non-testifying confidential informants who provided information

-1-

on drug trafficking organizations in Mexico; (3) contacts, direct or indirect, between defendant and U.S. law enforcement officials regarding defendant's alleged efforts to cooperate with the government; (4) government policies of selective law enforcement which allegedly favor the Sinaloa Cartel over other drug trafficking organizations; and (5) unrelated U.S. law enforcement operations commonly referred to as "Fast and Furious" and the Juarez House of Death." For the reasons set forth in the government's response to and motion *in limine* to bar defendant's notice of public authority, R. 85, and the government's response to defendant's motion to dismiss based on promises of immunity, R. 109, the government denies that defendant was conferred immunity or authority for his actions and has moved *in limine* to bar any such defenses at trial as a matter of law. As explained in further detail below, because defendant has failed to establish that his proffered defenses are legally tenable and his discovery demands are unreasonable in their scope, defendant is not entitled to further discovery related to immunity, public authority, or entrapment by estoppel.

## ARGUMENT

### A.    The Government Has Met Its Discovery Obligations.

With its discovery production of September 6, 2011, the government has more than satisfied its discovery obligations. Pursuant to Fed. R. Crim. P. 16, the government has produced all discoverable information related to each known contact between defendant and United States law enforcement officials up until the time of defendant's extradition to the United States. Since defendant has been in U.S. custody, no U.S. law enforcement official has had contact with defendant outside the presence of his defense counsel. As the materials produced to defendant make clear, at no time did an authorized agent of the U.S. government bestow upon defendant public authority to conduct any illegal activity. However, in an abundance of caution, the undersigned Assistant U.S.

Attorneys have collectively interviewed all U.S. law enforcement personnel known to have had contact with defendant, as well as their immediate supervisors. Without exception, each of these agents informed the undersigned that no promises of immunity were issued to defendant at any time, defendant was never informed that he had public authority to engage in criminal conduct of any kind, and defendant was never informed that it was legal for him to traffic massive quantities of drugs or otherwise participate in a transnational narcotics conspiracy. The supervisory agents further informed that undersigned that the agents who met with defendant were not given authority to issue such promises or representations, nor were the supervisors informed that promises or representations were made without such authority.

The government is unaware of any discovery obligation that requires it to produce materials related to the cooperation of Humberto Loya-Castro. Nonetheless, the government voluntarily produced records of Loya-Castro's cooperation agreement with the government, which ultimately led to a decision by the United States Attorney for the Southern District of California to dismiss Loya-Castro's pre-existing indictment. As explained in greater detail in the government's response to defendant's motion to dismiss the indictment based on immunity, R. 109, these materials establish that Loya-Castro was never granted immunity or public authority for his actions. Rather, Loya-Castro was repeatedly and consistently informed that no promises of any kind were made to him in exchange for his cooperation and that any potential benefits would be conferred at the sole discretion of the U.S. Attorney for the Southern District of California. Accordingly, there was no immunity or public authority agreement to extend to defendant, much less every member of the Sinaloa Cartel. Subject to the government's *Giglio* and § 3500 obligations, the government objects to the production of any further records related to Loya-Castro, or any other cooperating defendant, confidential

source, or source of information, as defendant has failed to establish, either legally or factually, that he is entitled to additional discovery on this issue.

In addition to demanding discovery related to Loya-Castro to which he is not entitled, defendant further requests information related to his own purported cooperation that is not discoverable at this juncture or simply does not exist. In particular, defendant requests information related to alleged statements defendant made to third parties which were relayed to the government. R. 93 at 3, 7-10. Should such materials even exist, statements of this kind are not discoverable as Rule 16 statements of defendant. Rather, statements made by a defendant to a third party become discoverable only as § 3500 material should the receiver of such a statement be called as a witness. *See United States v. Callahan*, 534, F.2d 763, 765 (7th Cir. 1976) ("Where the statement of the defendant is only in the recollection of a witness, then it is not discoverable even if that witness' recollection is eventually written or recorded."), citing *United States v. Feinberg*, 502 F. 2d 1180, 1183 (7th Cir. 1974).

Defendant further requests information related to his own establishment as a DEA confidential source. R. 93 at 6. Although the government does not concede that information regarding defendant's own cooperation would necessarily be discoverable in and of itself, the government asserts that defendant was never established as a confidential source by the DEA and thus no such materials exist. Defendant extends this request to his cooperation files wherever they may exist in every federal, state, and local law enforcement agency in the United States and Mexico. Although the government has no ability to search the files of every law enforcement entity in the United States, much less Mexico, the U.S. Attorney's Office for the Northern District of Illinois is not aware of defendant acting as an official confidential source for any law enforcement agency.

Similar to his other discovery motions, defendant also requests personal identifying information of various individuals, including Loya-Castro and other non-testifying confidential informants. In particular, defendant requests that the government provide the name, addresses, telephone numbers, date of birth, place of birth, and social security number of such persons. *See* R. 93 at 4-6. For the security reasons stated in the government's motion to delay discovery pursuant to Fed. R. Crim. P. 16(d), R.50, the government will not produce the whereabouts, personal identifying information, or phone numbers of any witness or source at any time.

### B. Defendant Is Not Entitled to Additional Discovery Because He Has Failed to Demonstrate that His Purported Defenses Are Viable.

With its production of September 6, 2011, the government has produced all discoverable materials related to defendant's purported defense of public-authority and objects to the production of any further information. Defendant has failed to set forth sufficient information to establish that the defense of public authority should be available to him at trial. Moreover, defendant cites no relevant authority in support of his claim that he is entitled to further discovery relating to such a defense, nor has he established the relevancy of the material that he seeks.

A defendant is entitled to present a public-authority defense only after showing that: (1) a public official expressly authorized defendant to take otherwise illegal action; (2) the official had actual authority to provide such authorization; and (3) defendant reasonably relied on the authorization. *United States v. Strahan*, 565 F.3d 1047, 1051 (7th Cir. 2009). The Seventh Circuit has consistently held that, before a defendant can proceed with an affirmative defense, he must present "more than a scintilla of evidence" that demonstrates that he can satisfy the legal requirements for asserting the proposed defense. *United States v. Blassingame*, 197 F.3d 271, 279 (7th Cir. 1999). *See also United States v. Haynes*, 143 F.3d 1089, 1090 (7th Cir. 1998) ("A judge

may, and generally should, block the introduction of evidence supporting a proposed defense unless all of its elements can be established."). Where a defendant has failed to establish that an affirmative defense applies, numerous courts have denied discovery requests predicated on the defense. *See United States v. Passaro*, 577 F.3d 207, 221 (4th Cir. 2009) (affirming district court's order denying discovery because defendant offered no showing that someone with actual authority sanctioned an otherwise unlawful act); *United States v. Giffen*, 473 F.3d 30, 38-39 (2d Cir. 2006) (noting district court's observation that defendant might be entitled to additional discovery on public-authority and entrapment-by-estoppel defenses, and concluding that defendant was not entitled to present either defense); *United States v. Matta-Bellesteros*, 71 F.3d 754, 770 (9th Cir. 1995) (affirming district court's order quashing subpoenas where "[t]here was no showing that any relationship between [a cocaine trafficker], the CIA, and the Nicaraguan Contras amounted to United States government approval of the narcotics enterprise alleged in the indictment."). As defendant has failed to demonstrate that he can satisfy the legal requirements of his proffered defenses, this Court should likewise deny defendant's motion for discovery.

As the government explained in its response to defendant's Rule 12.3 notice, R. 85, a public authority defense requires that defendant personally had a conversation with a government official in which the official expressly authorized defendant to break the law. For these reasons, defendant himself would have knowledge of the central facts that are relevant to a public-authority defense had such a conversation taken place. Nonetheless, defendant has failed to establish that such a conversation occurred, and thus defendant's discovery request amounts to an impermissible fishing expedition predicated on the unsupported and implausible pretense that an authorized agent of the United States government sanctioned not only defendant, but the entirety of one of the largest

criminal organizations in the world, to traffic limitless quantities of drugs.[1]

### 1. Defendant is not entitled to additional discovery based on his allegation that he received public authority through Loya-Castro

Defendant alleges that beginning in January 2004, he provided information to Loya-Castro, who in turn passed the information to DEA, in exchange for immunity for Loya-Castro, defendant, and the entire Sinaloa Cartel. R. 94 at 2-4. Defendant does not claim to have had any direct contact with U.S. law enforcement officials until March 2009. *Id.* at 4. In March 2009, defendant alleges that he met personally with DEA agents in Mexico City, and that these agents promised defendant immunity in exchange for his cooperation with the United States. *Id.* at 4-5. Even if all of these allegations are true, they are insufficient as a matter of law to establish a public-authority defense and thus defendant is not entitled to discovery based on his claims.[2]

For two reasons, defendant cannot make a showing of public authority based on his communications with Loya-Castro before March 2009. First, contact with a third-party intermediary, rather than direct contact with U.S. officials, is inadequate. Second, even if communications with Loya-Castro could otherwise support a public-authority defense, law

---

[1] Through counsel, defendant has further alleged that DEA and ICE agents promised him immunity in exchange for his cooperation with the United States. As outlined in the government's response to defendant's motion to dismiss based on alleged promises of immunity, R. 109, this allegation is false and cannot serve as a pretext for further discovery.

[2] Defendant's filings have not alleged that any official ever affirmatively assured defendant that importing tons of cocaine and kilograms of heroin into the United States was actually legal; defendant has alleged instead that agents told defendant he would receive immunity for conduct that was illegal. The entrapment-by-estoppel defense requires an affirmative assurance that defendant's conduct is legal. *See, e.g.*, *Strahan*, 565 F.3d at 1051; *United States v. Baker*, 438 F.3d 749, 755 (7th Cir. 2006); *United States v. Fish*, 388 F.3d 284, 286-87 (7th Cir. 2004) (vacated on other grounds by 544 U.S. 916 (2005)); *United States v. Howell*, 37 F.3d 1197, 1204-05 & n.9 (7th Cir. 1994). Because defendant makes no such allegation, this response is confined to the public-authority defense.

enforcement agents had no actual authority to promise defendant immunity through Loya-Castro.

Because the central premise of the public-authority defense is that "*a government official* authorized the defendant to perform an act that would otherwise be a crime," *Baker*, 438 F.3d at 753 (emphasis added), the defense requires that defendant have direct contact with a government official. *See Fish*, 399 F.3d at 287 (affirming district court's pre-trial exclusion of the entrapment-by-estoppel defense where, among other things, defendant failed to identify "a government official with whom [defendant] had contact."). As the Third Circuit has explained in holding that a defendant was not entitled to public-authority or entrapment-by-estoppel instructions, the defendant must have direct contact with government agents because "[t]he assurances of . . . .his partner in crime do not rise to the level of instructions, encouragement, or advice from a government official." *United States v. Pitt*, 193 F.3d 751, 758 (3d Cir. 1999). Therefore, even if, as defendant alleges, agents promised Loya-Castro immunity, and Loya-Castro told defendant that defendant had the same deal, these communications with Loya-Castro are insufficient to establish a public authority defense.

Furthermore, the public-authority defense requires that the official who allegedly authorized defendant's conduct must have had actual authority to do so. *See Baker*, 438 F.3d at 753-754. Actual authority requires that, regardless of what defendant believed, the government official must "in fact ha[ve] the authority to empower the defendant to perform the acts in question." *Id.* at 753. As explained in the government's response to defendant's motion to dismiss based on immunity, DEA and ICE agents did not have actual authority to grant defendant immunity, and no official in the Department of Justice authorized agents to make such a promise, or ratified such a promise after it was made. *See* Govt. Response, R. 109. Therefore, even if defendant's allegations about his conversations with Loya-Castro are true, they cannot support a request for discovery based on a

public authority defense.

### 2. Defendant Is Not Entitled to Further Discovery Because He Did Not Receive Public Authority Directly From Law Enforcement Agents

Defendant alleges that DEA agents personally promised him immunity during a face-to-face meeting in Mexico City in March 2009. As discussed above, and in greater detail in the government's response to defendant's motion to dismiss based on immunity, R. 109, this claim is false. Even if it were true, it would not help defendant, because the meeting occurred months after defendant's crimes were completed. *See* Second Superseding Indictment, R. 75 at 1, 18 (charging defendant with a conspiracy that ended on or about December 1, 2008). A promise of immunity for past crimes is not public authority. Public authority is necessarily prospective; an official cannot authorize someone to do something he has already done, at most the official can immunize him afterward. That is why the requirements of the public-authority defense always contemplate that an official must give defendant authority to take a future action. *See, e.g., Strahan*, 565 F.3d at 1051 (upholding district court's refusal to give public authority instruction and noting that "[n]o witness testified that [the official] ever instructed or authorized [defendant] to distribute crack cocaine," defendant testified that the official "never said I could sell drugs," and defendant never asked the official for permission to sell drugs). As the Seventh Circuit has explained, the public authority defense requires that "the defendant engage[d] in conduct at the request of a government official." *Strahan*, 565 F.3d at 1051 (quoting *United States v. Jumah*, 493 F.3d 868, 875 n.4 (7th Cir. 2007)). Government officials cannot have requested that defendant join the conspiracy charged in the indictment if those officials did not meet with defendant until after the conspiracy was over.

Finally, even if agents could have somehow retrospectively authorized defendant's actions, as explained above, the public authority defense requires that the agents have actual authority, and

-9-

in this case they did not. Therefore, even if all of defendant's factual allegations are true, he is not entitled to present a public authority defense at trial. Because defendant's purported affirmative defense is legally untenable, the government has no obligation to produce any further discovery.

### 3. Defendant's request is an improper fishing expedition

Defendant contends that the information he seeks is relevant and made discoverable by his claimed defense of public authority.[3] As is the case here, where a defendant has failed to establish the applicability of a purported defense, courts have routinely denied discovery requests premised on the same. In *United States v. Tokash*, 282 F.3d 962 (7th Cir. 2002), the court affirmed not only the district court's ruling *in limine* that a necessity defense was not available, but also affirmed the district court's denial of the defendants' motion to issue subpoenas to a penitentiary for records that the defendants believed could support such a defense.

In holding that the defendants could not engage in a fishing expedition supported by their purported affirmative defense, the Seventh Circuit dismissed the defendants' argument the district court had created a "chicken or egg" dilemma in which the defendants could not establish the threshold showing of the required elements of their proposed necessity defense unless they were allowed their fishing expedition through the records of the federal agency involved. *Tokash*, 282 F.3d at 971. In the context of upholding quashed Rule 17(c) subpoenas, the court explained that

---

[3]Throughout his memorandum in support of his motion for public authority discovery, defendant asserts that he is in possession of evidence in support of his claims. However, defendant does specify what his evidence is or otherwise elaborate on these claims. Without such specificity, this Court should place no weight on defendant's empty factual assertions. To the extent that evidence does exist on which defendant intends to rely in support of his claimed affirmative defenses, the government hereby requests that such information be produced in accordance with defendant's reciprocal discovery obligations under Fed. R. Crim. P. 12 and 16 and Local Rule 12.1.

discovery does not exist "to allow criminal defendants to blindly comb through government records in a futile effort to find a defense to a criminal charge. Instead, it allows only for the gathering of specifically identified documents which a defendant knows to contain relevant evidence to an admissible issue at trial." *Id.*, citing *United States v. Nixon*, 418 U.S. 683, 700 (1974).

In *United States v. Kashmiri*, the defendant in a material support for terrorism case claimed to have operated with public authority and demanded discovery in the form of various diplomatic cables and FBI documents. In granting the government's motion to quash the defendant's discovery demands, the court held that the defendant merely speculated that such cables and materials existed and had failed to establish that his request was not a fishing expedition in the guise of a discovery request. *Id.*, No. 09 CR 830-4, 2011 WL 1326373, *4-5 (N.D. Ill. Apr. 1, 2011).

Like these cases, defendant's purported affirmative defense here has no legal support. The Court should bar any effort to present evidence or argument which posits that Loya-Castro, or any other non-government agent, could sanction the defendant's criminal conduct prospectively or that an unauthorized government agent could authorize such conduct retroactively. As such, any document that may be responsive to defendant's discovery demands related to defendant's intended defense cannot be "evidentiary and relevant." *Tokash*, 282 F.3d at 971. For the same reason, defendant cannot establish that any responsive documents are essential to the defense. *Id.* In addition, like the defendants in *Tokash*, defendant cannot claim the existence of a "chicken or egg" situation to justify his fishing expedition. A public authority defense necessarily requires that defendant himself possess knowledge of the central facts relevant to make a primae facie showing that such a defense is warranted. Because public authority requires representations to be made directly from an authorized government agent to a defendant, in this case, defendant would be in the

best position to detail the promises or authorizations made to him. As in *Tokash*, defendant cannot claim that he needs to be provided with discovery to establish what agents told him before he can adequately establish his defense. Such circular reasoning is inadequate to grant defendant permission to rummage through the governments files in the hopes of finding something that supports his claim.

Moreover, like, *Kashmiri*, defendant has failed to establish that the information he seeks even exists. For example, defendant requests information related to catch phrases and buzzwords such as the "war on drugs," the "kingpin strategy," and the "divide and conquer" strategy. Not only does defendant fail to establish that discoverable items related to these topics exist, he does not even establish that these purported topics are actual policies rather than colloquialisms. Defendant offers only elusive remarks that the government possesses information which supports his allegations. Defendant's offering is insufficient to transform his request from a fishing expedition to a narrowly tailored, good faith request for discoverable information. For these reasons, defendant's discovery request should be denied as a matter of law.

**C.     Defendant Seeks Irrelevant Materials to Which He Is Not Entitled**

Defendant's 54-paragraph demand for additional discovery is nearly boundless. Similar to defendant's other discovery motions, R. 89, 90, 91, 92, defendant, while citing no relevant authority, requests broad categories of information with little, if any, limits on time, subject matter or materiality. Defendant requests information that, if it exists, is beyond the knowledge, control and possession of the prosecution team, including but not limited to information that is possessed by foreign governments. Among other demands, defendant requests informant files and personal identifying information of non-testifying confidential sources associated in some way to the Sinaloa

Cartel, materials in the possession of the government of Mexico related to unspecified joint investigations, diplomatic cables and other information related to the "war on drugs," and materials associated with two completely unrelated investigations that happened to involve Mexico, "Fast and Furious" and the "Juarez House of Death." Were the government to fully comply with defendant's broad and baseless discovery demands, a trial in this case would be delayed indefinitely, likely for years, as the prosecution team searched every recess of government for information that is not rationally related to this case.

Defendant requests *all* information in the possession of the U.S. government related to an ATF investigation referred to as "Fast and Furious" and an investigation associated with events referred to as the "Juarez House of Death." R. 94 at 10-14. Defendant again provides no legal authority for these demands and offers only more of the same vague, conclusory statements in support of their factual relevance. With respect to Fast and Furious, defendant submits that he "believes that the documentation that he requests will confirm that the weapons received by the Sinaloa Cartel members and its leader in Operation 'Fast & Furious' were provided under the agreement entered into between the United States government and Mr. Loya-Castro on behalf of the Sinaloa Cartel that is the subject of his defense of re public authority."[4] R. 94 at 13. Without citation, defendant further alleges that former acting ATF director Kenneth Melson somehow confirmed defendant's allegation that "the government at its highest levels entered into agreements

---

[4] Curiously, defendant seeks to obtain the congressional report related to Fast and Furious, R. 93 at 14, yet defendant cites to the findings of the report in his memorandum, indicating that he already possesses it. Although not relevant, exculpatory, or discoverable in this case, the government notes that the congressional report regarding Fast and Furious is a publicly available document that may be found at:
http://oversight.house.gov/images/stories/Reports/ATF_Report.pdf

with cartel leaders to act as informants against rival cartels" and receive benefits. *Id.* In support of his House of Death request, defendant offers only that he "believes that the materials. . . .will confirm his allegations that the United States has a policy of entering into agreements with individuals who they know are violent traffickers, so long as those persons are willing to provide information against other drug traffickers, and that they entered into such an agreement with the Sinaloa Cartel." R. 94 at 14.

Defendant's requests related to Fast and Furious, the House of Death, as well as references to Whitey Bulger, and other unrelated matters are gratuitous and wholly unrelated to any legitimate discovery issues in this case. Defendant's statements offered to establish the relevancy of the requested information only serve to confirm that defendant has no good faith basis to assert that the materials actually contain discoverable material relevant to his claimed defense. Defendant's attempt to tie in Fast and Furious is particularly meritless considering that the conspiracy for which he is charged had ended and defendant had been in custody for months before the Fast and Furious investigation even began. *See*, Indictment in *United States v. Avila*, et al, Case 2:11-cr-00126-JAT (D. Ariz.), R. 3 (conspiracy involved is alleged to have occurred between September 2009 and December 2010). As the Seventh Circuit has made clear, defendant is not entitled to "blindly comb through government records" in the hopes of finding something in support of his claimed affirmative defenses. *Tokash,* 282 F.3d at 971. Defendant's requests related to these investigations seek to do just that and his request for materials from these cases should be denied.

## CONCLUSION

WHEREFORE, for the reasons stated herein the Court should deny defendant's motion for discovery regarding defense of public authority.

Respectfully submitted,
PATRICK J. FITZGERALD
United States Attorney

By: *s/ Thomas D. Shakeshaft*
     THOMAS D. SHAKESHAFT
     ANDREW C. PORTER
     MICHAEL FERRARA
     MARC KRICKBAUM
     Assistant U.S. Attorneys
     219 South Dearborn Street, Fifth Floor
     Chicago, Illinois 60604
     (312) 353-5300

## CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney hereby certifies that the following document:

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR DISCOVERY REGARDING DEFENSE OF PUBLIC AUTHORITY**

was served September 9, 2011, in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, LR5.5, and the General Order on Electronic Case filing pursuant to the District Court's Electronic Case Filing (ECF) system as to ECF filers.

        Respectfully submitted,

        PATRICK J. FITZGERALD
        United States Attorney

By:    *s/Michael Ferrara*
        MICHAEL FERRARA
        Assistant United States Attorney
        219 South Dearborn Street, 5th Floor
        Chicago, Illinois 60604
        (312) 886-7649