UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 09CR383-3 |
| v. | ) | |
| | ) | Judge Ruben Castillo |
| JESUS VICENTE ZAMBADA-NIEBLA | ) | |

### DECLARATION OF FERNANDO X. GAXIOLA

I, Fernando X. Gaxiola, declare under penalty of perjury that:

### INTRODUCTION

1. I am an attorney licensed to practice in the State of Arizona. I have been retained to represent Jesus Vicente Zambada-Niebla in the above-captioned case. I make this declaration in support of various pretrial motions that we have filed on his behalf.

2. Mr. Zambada-Niebla has also retained attorneys Alvin Michaelson, Edward Panzer, and George Santangelo as my co-counsel.

3. I am fluent in both the Spanish and English languages.

### INTERVIEWS OF HUMBERTO LOYA-CASTRO

4. I interviewed Humberto Loya-Castro on March 9, 2010 and July 14, 2010 at the Four Seasons Hotel in Mexico City, Mexico. Mr. Michaelson, Mr. Panzer, and Mr. Santangelo were also present for these interviews. During the interviews, Mr. Michaelson, Mr. Panzer, and Mr. Santangelo spoke English, Mr. Loya-Castro spoke Spanish, and I acted as an interpreter.

1

5. Mr. Loya-Castro stated that he had been an attorney in Mexico since 1979. In the late 1980's, Mr. Loya-Castro met Joaquin Guzman-Loera, known to him as "Chapo." Mr. Loya-Castro had also previously met Ismael Zambada-Garcia, known to him as "Mayo," and his son, Mr. Zambada-Niebla. Mr. Loya-Castro became a legal adviser and confidant for Chapo and Mayo and members of the group popularly known as the Sinaloa Cartel, an organization that transported drugs into the United States. He said he knew that the cartel transported drugs into the United States.

6. Mr. Loya-Castro stated that, in the mid-1990's, he was indicted in the Southern District of California. In the late 1990's, in an effort to resolve the charges against him, he met in Monterey, Mexico with United States agents. The agents informed him that, given his relationship with Chapo and the Sinaloa Cartel, they believed that he could give them valuable information about rival drug organizations. Mr. Loya-Castro advised the agents that he would need to seek the approval of Chapo before giving information. Chapo gave his approval, and Mr. Loya-Castro began to relay information that he received from Chapo to the agents.

7. Mr. Loya-Castro stated that the United States agents then asked him for information about the Sinaloa Cartel. Mr. Loya-Castro said that he refused to provide them information about the Sinaloa Cartel and continued only to provide information about rival drug organizations.

8. Mr. Loya-Castro stated that, in the mid-2000's, he met with Drug Enforcement Administration ("DEA") agents and an individual who may have been from the United States consulate or an American prosecutor in Monterey, Mexico. During this meeting, the agents discussed the charges against him in the Southern District of California. The agents told him that

those charges and any other charges pending against him in the United States would be dismissed if he provided them with information that would lead to the arrests of individuals and the confiscation of drugs. Mr. Loya-Castro informed them that he needed the approval of Chapo and again said that he would not give any information regarding the Sinaloa Cartel. The agents agreed to these conditions, and Mr. Loya-Castro obtained the approval of Chapo.

9. Mr. Loya-Castro stated that agents told him that, in exchange for information about rival drug trafficking organizations, the United States government agreed to dismiss the prosecution of the pending case against Mr. Loya-Castro, not to interfere with his drug trafficking activities and those of the Sinaloa Cartel, to not actively prosecute him, Chapo, Mayo, and the leadership of the Sinaloa Cartel, and to not apprehend them. The agents stated that this arrangement had been approved by high-ranking officials and federal prosecutors. Mr. Loya-Castro told Chapo and Mayo about this arrangement, and they agreed and relied on this agreement by providing the requested information. Mr. Zambada-Niebla was told of this agreement and relied on this arrangement by providing the requested information to Mr. Loya-Castro, who would then pass along the information to the agents. The agents told Mr. Loya-Castro that, when he went to meet with Chapo, he should notify the agents in advance. The agents assured Mr. Loya-Castro that they would not follow him and would not interfere with the meetings so that he could be calm and obtain as much information as possible, and Mr. Loya-Castro informed Chapo that the agents would be aware that he was going to meet with him. The agents also told Mr. Loya-Castro to be careful when he spoke on the telephone with Chapo because they could be heard by Mexican authorities, and therefore he should not be explicit about the information that he gave Chapo over the telephone. The agents also allowed Mr. Loya-Castro

to be present at confidential meetings where information about the Sinaloa Cartel was being discussed and allowed him to pass the information along to Chapo.

    10. Mr. Loya-Castro stated that he gave the agents significant information that he relayed from Chapo, Mayo, and Mr. Zambada-Niebla, which resulted in numerous arrests of major figures in rival drug trafficking organizations. He said he was present when Chapo received a call from Mr. Zambada-Niebla in which Mr. Zambada-Niebla provided information about a major rival drug trafficker for the purpose of passing on to the DEA, which he did pass on and which helped lead to the apprehension of that individual. Mr. Loya-Castro stated that, under his agreement with the government, the charges against him were dismissed in 2008.

    11. Mr. Loya-Castro stated that, in 2007, he asked his main handler, a DEA agent named "Manny," to help him obtain the same deal that he had received for Mr. Zambada-Niebla who had outstanding federal charges in the District of Columbia, in exchange for information. Thereafter, Mr. Loya-Castro negotiated the same deal for Mr. Zambada-Niebla. In 2009, Manny informed Loya-Castro that the federal prosecutor in Washington D.C. and the DEA had agreed that Mr. Zambada-Niebla's charges would also be dismissed and he would not be subject to prosecution in exchange for information. As a result, they arranged a meeting between the DEA agents and Mr. Zambada-Niebla in Mexico City so that the parties could establish a more personal relationship and so they could deal directly under the same arrangement that Mr. Loya-Castro had. Mr. Loya-Castro told Mr. Zambada-Nieble that he was immune from arrest and prosecution under the existing agreement and that the agents wanted to continue the same arrangement with him.

12. Mr. Loya-Castro stated that, on the day of the meeting, Manny told him that they would have to cancel because a newspaper article indicated a possible leak regarding the meeting. Mr. Loya-Castro insisted that the meeting had to take place because Mr. Zambada-Niebla had put himself in danger by traveling to Mexico City. The meeting took place with the DEA agents and Mr. Zambada-Niebla at a hotel. Manny told Mr. Zambada-Niebla that he had the same deal as Mr. Loya-Castro and that the deal had been approved by the federal prosecutor in Washington, D.C. and high-ranking DEA officials. Manny told Mr. Zambada-Niebla that he would get full credit for the information he had previously provided, that the pending indictment against him would be dismissed, and that he would be immune from further prosecution. Mr. Loya-Castro said that Mr. Zambada-Niebla said he would give information regarding the location of a high-ranking rival cartel member who was a fugitive and that he had previously given information about that person to the DEA through Mr. Loya-Castro. The agents indicated that they would have a more complete meeting after things calmed down, but a few hours after Mr. Zambada-Niebla left the hotel, he was arrested by Mexican authorities.

13. Mr. Loya-Castro stated that he was still in contact with Manny and the DEA on a regular basis and was still providing them with information about rival drug cartels. He stated that he has met with United States agents at least 50 times, has had hundreds of telephone calls, and numerous emails with the agents.

## SUBSEQUENT CONTACTS WITH MR. LOYA-CASTRO

14. On or about September 29, 2010, defense counsel served on the government a lengthy request for discovery which, inter alia, requested information relating to the public authority and immunity defenses and which prominently referred to Mr. Loya-Castro's

relationships with the DEA and other government agencies as well as the role he played on behalf of the Sinaloa Cartel.

15. Shortly afterwards, defense counsel were informed that Mr. Loya-Castro wanted to meet with defense counsel again, and a meeting was scheduled for October 26, 2010 in Mexico City.

16. On that date, I, Mr. Michaelson, Mr. Panzer, and Mr. Santangelo met with Mr. Loya-Castro at the Four Seasons Hotel in Mexico City. Once again I interpreted the statements made by Mr. Loya-Castro and the other defense counsel.

17. At the meeting, Mr. Loya-Castro told us that Manny contacted him after we filed our discovery requests and told him that he could not testify for the defense. Manny told him, inter alia, that the American lawyers were doing a bad job in defending Mr. Zambada-Niebla and if they kept up what they were doing, many people would be exposed and it would cause problems for Mr. Loya-Castro and his family, Mayo and Chapo, and even the American lawyers would be at risk. He also said that Manny told him that if his and the cartel's relationship with him and the U.S. government were exposed and if Mr. Loya-Castro's activities in providing information on other rival cartel leaders was exposed it would be not only bad for him, but the U.S. government since they didn't want anyone to know about their relationship with the heads of the Sinaloa Cartel. He told us that Manny told him to tell Chapo and Mayo that the lawyers' tactics were bad and could endanger them.

18. Mr. Loya-Castro also told us that Manny told him that he wanted Mr. Loya-Castro to meet with the Chicago DEA agents involved in Mr. Zambada-Niebla's case. Mr. Loya-Castro also told us that Manny proposed that he come to Chicago to meet with Mr. Zambada-

6

Niebla for the purpose of getting him to change and re-evaluate the defense strategy.

19. Mr Loya-Castro told us that because of what Manny told him he was terrified for the safety of himself and his family if the defense exposed what had been going on and felt that he could not testify as to what had occurred and his being an informant because they would all be in danger. Mr. Loya-Castro was visibly disturbed, sweating profusely, and shaking, and repeated that he was frightened to come forward for the defense and would not do so.

20. Thereafter, defense counsel were informed that Mr. Loya-Castro had changed his mind and would testify for the defense about what he had told us previously in March and July of 2010.

21. In March of 2011, the defense filed its notice of public authority defense. The filing was the subject of numerous newspaper articles throughout Mexico.

22. On July 29, 2011, the defense filed a series of motions including motions relating to the defense of public authority and the defense of immunity. In those motions, Mr. Loya-Castro's informant activities and the relationship between the U.S. Government and the leadership of the Sinaloa Cartel were prominently mentioned.

23. In early August, shortly after the filing of those motions, defense counsel were informed that Mr. Loya-Castro had contacted Mr. Zambada-Niebla's Mexican counsel and had informed them that Manny had contacted him again and had told him again that he could not testify for the defense. Manny told him again if he testified and exposed his informant role and the relationship between the U.S. government and the leadership of the Sinaloa Cartel it would be bad for him, the U.S. government, and the leaders of the cartel and that the Cartel leaders as well as him and his family would be endangered. He told them that Manny told him to tell

Chapo and Mayo that the American lawyers were doing the wrong thing and that they should be told to stop. Thereafter, on or about August 18, 2011, defense counsel were informed by Mexican counsel that Mr. Loya-Castro said that Manny had contacted him again and told him that the Chicago people involved with Mr. Zambada-Niebla's case wanted to meet with him in San Diego on August 30, 2011. He told the lawyers that he was extremely frightened and did not know what to do. He indicated that he was again fearful of testifying because of what Manny was telling him and did not want to meet with the government.

24. On or about September 9, 2011, the defense received the government's responses to our motions. The government's responses claimed that Mr. Loya-Castro disputes some of the allegations made by the defense in its motions.

I declare that the foregoing is true and correct.


Dated: October 24, 2011         /s/Fernando X. Gaxiola
                                Fernando X. Gaxiola