**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

FILED

APR 3 2013
APR 3 2013
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 09 CR 383 |
| vs. | ) | Judge Ruben Castillo |
| | ) | |
| JESUS VICENTE ZAMBADA-NIEBLA | ) | |
| a/k/a "Vicente Zambada-Niebla," | ) | |
| a/k/a "Vicente Zambada," | ) | |
| a/k/a "Mayito," | ) | |
| a/k/a "30 " | ) | |

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, GARY S. SHAPIRO, and defendant VICENTE ZAMBADA-NIEBLA, and his attorneys, ALVIN S. MICHAELSON, EDWARD PANZER, GEORGE SANTANGELO, and FERNANDO X. GAXIOLA, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The third superseding indictment in this case charges defendant with conspiracy to possess with intent to distribute and to distribute controlled substances in violation of Title 21, United States Code, Section 846 (Count One), and conspiracy to import a controlled substance into the United States, in violation of Title 21, United States Code, Section 963 (Count Two).

3.     Defendant has read the charges against him contained in the third superseding indictment, and those charges have been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the third superseding indictment: Count One, which charges defendant with conspiring to knowingly and intentionally possess with intent to distribute and to distribute controlled substances, namely 5 kilograms or more of mixtures and substances containing a detectable amount of cocaine, a Schedule II Narcotic Drug Controlled Substance, and 1 kilogram or more of mixtures and substances containing a detectable amount of heroin, a Schedule I Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1); all in violation of Title 21, United States Code, Section 846. In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## Factual Basis

6.     Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the third superseding indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt, constitute

relevant conduct pursuant to Guideline § 1B1.3, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

Count One charges that beginning no later than in or about May 2005, and continuing until at least on or about December 1, 2008, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant JESUS VICENTE ZAMBADA-NIEBLA, a/k/a "Vicente Zambada-Niebla," a/k/a "Vicente Zambada," a/k/a "Mayito," a/k/a "30," conspired with Joaquin Guzman-Loera, a/k/a "El Chapo," a/k/a "Chapo Guzman;" Ismael Zambada-Garcia, a/k/a "El Mayo," a/k/a "Mayo Zambada;" Alfredo Guzman-Salazar, a/k/a "Alfredillo;" Alfredo Vasquez-Hernandez, a/k/a "Alfredo Compadre;" Juan Guzman-Rocha, a/k/a "Juancho;" German Olivares; Felipe Cabrera-Sarabia; Tomas Arevalo-Renteria; Pedro Flores and Margarito Flores; and with others known and unknown, knowingly and intentionally to possess with intent to distribute and to distribute controlled substances, namely 5 kilograms or more of mixtures and substances containing a detectable amount of cocaine, a Schedule II Narcotic Drug Controlled Substance, and 1 kilogram or more of mixtures and substances containing a detectable amount of heroin, a Schedule I Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1); all in violation of Title 21, United States Code, Section 846. Defendant admits that he committed the offense charged in Count One.

Specifically, between approximately May 2005 and December 1, 2008, defendant ZAMBADA-NIEBLA was a member of a cocaine and heroin drug trafficking organization

3

in Mexico commonly known to its members and its associates, and to the public, as the "Sinaloa Cartel." During this period, the leaders of the Sinaloa Cartel included Joaquin Guzman-Loera (known to Zambada-Niebla as "Chapo" or "Chapo Guzman") and ZAMBADA-NIEBLA's father, Ismael Zambada-Garcia (also known as "Mayo" or "Mayo Zambada").

ZAMBADA-NIEBLA was a high-level member of the Sinaloa Cartel and of the faction of the cartel controlled by his father, Mayo Zambada. ZAMBADA-NIEBLA was responsible for many aspects of the cartel's operations, both independently and as a trusted lieutenant for his father. ZAMBADA-NIEBLA acted, among other things, as a surrogate for his father in sending and receiving messages related to the cartel's operations, and as a logistical coordinator for his father. ZAMBADA-NIEBLA at times coordinated deliveries of multi-kilogram quantities of cocaine from Central and South America into Mexico, for further distribution into the United States. ZAMBADA-NIEBLA was also aware of the cartel's distribution of wholesale quantities of heroin in Chicago. On at least one occasion, defendant facilitated the distribution of wholesale quantities of heroin in Chicago by inquiring about payment for it. ZAMBADA-NIEBLA was aware of and benefitted from deliveries of bulk quantities of United States currency from customers in the United States to the Sinaloa Cartel in Mexico. At other times, ZAMBADA-NIEBLA assumed the role of coordinator and messenger for his father, knowing of the cartel's business and with the intent to make its purpose – the distribution of narcotics into the United States – succeed.

4

As part of ZAMBADA-NIEBLA's participation in the cartel's business, ZAMBADA-NIEBLA was aware of, and frequently participated directly in, coordinating the cartel's narcotics trafficking activities. At times during this period, ZAMBADA-NIEBLA assisted in coordinating the importation of multi-ton quantities of cocaine from Central and South American countries, including Colombia and Panama, into the interior of Mexico. ZAMBADA-NIEBLA at times facilitated the unloading of multi-ton shipments of cocaine in Mexico, and facilitated the transportation and storage of these shipments within Mexico. ZAMBADA-NIEBLA subsequently assisted in coordinating the delivery of cocaine to wholesale distributors in Mexico, knowing that these distributors would in turn smuggle multi-ton quantities of cocaine, generally in shipments of hundreds of kilograms at a time, as well as, on at least one occasion, multi-kilogram quantities of heroin, from Mexico across the United States border, and then into and throughout the United States, including Chicago, Illinois, and elsewhere. On most occasions, the Sinaloa Cartel supplied this cocaine and, on occasion, heroin to the wholesalers on consignment, without payment at the time of delivery. Among the cocaine and heroin distributors of the Sinaloa Cartel were Pedro and Margarito Flores, whom ZAMBADA-NIEBLA knew distributed multi-ton quantities of cocaine and multi-kilogram quantities of heroin in Chicago, and in turn sent payment for those drugs to members of the Sinaloa Cartel, including Chapo Guzman, Mayo Zambada and ZAMBADA-NIEBLA, among others. ZAMBADA-NIEBLA was aware, because of his position within the cartel, that the Sinaloa Cartel obtained and then sold multi-ton quantities of cocaine for

distribution in the United States on a monthly, if not weekly, basis between 2005 and 2008.

ZAMBADA-NIEBLA is aware that Guzman-Loera, Zambada-Garcia, and factions of the Sinaloa Cartel controlled by them, coordinated their narcotics trafficking activities to import multi-ton quantities of cocaine from Central and South American countries, including Colombia and Panama, to the interior of Mexico, using various means, including but not limited to, aircraft, private aircraft, submarines and other submersible and semi-submersible vessels, container ships, go-fast boats, fishing vessels, buses, rail cars, tractor trailers, and automobiles.

ZAMBADA-NIEBLA was likewise aware that, and at times directly participated in facilitating the activity of, members and associates of the Sinaloa Cartel in transporting and causing to be transported large quantities of cash narcotics proceeds from locations in the United States to locations in Mexico in payment for narcotics supplied by the Sinaloa Cartel.

As part of the cartel's business, ZAMBADA-NIEBLA was aware that the cartel maintained stash houses, or offices, in, among many others, Culiacan, Sinaloa, Mexico; Mexicali, Baja California, Mexico; and Ciudad Juarez, Chihuahua, Mexico. These stash houses were used for the storage of drugs, cash, and weapons on behalf of the cartel.

ZAMBADA-NIEBLA is aware that his father has been among the leaders of the Sinaloa Cartel since the 1970s. ZAMBADA-NIEBLA acknowledges that his principal

livelihood was derived from his and his father's sale of controlled substances in the United States.

ZAMBADA-NIEBLA admits that both he and his father, as well as other members of the Sinaloa Cartel, were protected by the ubiquitous presence of weapons. ZAMBADA-NIEBLA himself had constant bodyguards who possessed numerous military-caliber weapons. ZAMBADA-NIEBLA was likewise aware that his father and Chapo Guzman were similarly protected.

ZAMBADA-NIEBLA also participated, directly and at the direction of Mayo Zambada, in the paying of bribes to Mexican law enforcement to promote the Sinaloa Cartel's narcotics trafficking business. On multiple occasions, ZAMBADA-NIEBLA arranged for the payment of bribes to local, state, and federal law enforcement officials in the Mexican government, for the purpose of facilitating the Sinaloa Cartel's narcotics trafficking business.

ZAMBADA-NIEBLA was also aware that the Sinaloa Cartel used violence and made credible threats of violence both to rival cartels and to law enforcement within the Mexican government for the purpose of facilitating the Sinaloa Cartel's narcotics trafficking business.

7. The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

7

### Maximum Statutory Penalties

8.    Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.    A maximum sentence of life imprisonment, and a statutory mandatory minimum sentence of 10 years.  Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation for this offense.  This offense also carries a maximum fine of $4,000,000, or not more than twice the gross profits or other proceeds from the offense.  Defendant further understands that the judge also must impose a term of supervised release of at least five years, and up to any number of years, including life.

b.    In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

### Sentencing Guidelines Calculations

9.    Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

8

10. For purposes of calculating the Sentencing Guidelines, the parties preliminarily agree on the following points:

a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing, subject to *Peugh v. United States,* 12-62 (S.Ct.). The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2012 Guidelines Manual.

b. **Offense Level Calculations.**

i. The offense level is 38, pursuant to Guideline §§ 2D1.1(a)(5) and 2D1.1(c)(1) because the offense involved more than 150 kilograms of cocaine and more than 30 kilograms of heroin.

ii. The offense level should be increased by two levels, pursuant to Guideline § 2D1.1(b)(1) because a firearm was possessed in connection with the offense.

iii. The offense level should be increased by two levels, pursuant to Guideline § 2D1.1(b)(2) because the defendant's organization used violence and made credible threats to use violence in connection with the offense.

iv. The offense level should be increased by two levels, pursuant to Guideline § 2D1.1(b)(3) because the offense involved importation of a controlled substance in which an aircraft other than a regularly scheduled commercial air carrier was

9

used to import or export the controlled substance and a submersible or semi-submersible vessel as described in 18 U.S.C. § 2285 was used.

      v.    The offense level should be increased by two levels, pursuant to Guideline § 2D1.1(b)(11) because defendant bribed a law enforcement officer to facilitate the commission of the offense.

      vi.    The offense should be increased by two levels pursuant to § 2D1.1(b)(12) because defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance.

      vii.    The offense level should be increased by two levels pursuant to § 2D1.1(b)(14)(C) or (E) because defendant receives an adjustment under § 3B1.1 and defendant was directly involved in the importation of a controlled substance, and defendant committed the offense as part of a pattern of criminal conduct engaged in as a livelihood, respectively.

      viii.    The offense level should be increased by four levels, pursuant to Guideline § 3B1.1(a) because the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive.

      ix.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including

by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

x.      In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.      **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d.      **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 51, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of life imprisonment, in addition to any supervised release and fine the Court may impose. Defendant also acknowledges that he is subject to a statutory minimum sentence of 10 years' imprisonment.

11

e.      Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f.      Both parties expressly acknowledge that this Agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Cooperation

11.     Defendant agrees he will fully and truthfully cooperate in any matter in which he is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil, or administrative proceeding. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

## Agreements Relating to Sentencing

12.     At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this Agreement, then the government shall move the Court, pursuant to Guideline § 5K1.l, to depart downward from the low end of the applicable Guideline range.  Defendant understands that the decision to depart from the applicable guidelines range rests solely with the Court. Defendant further understands that the government reserves the right to make whatever recommendation it deems appropriate regarding the extent of any downward departure.  Defendant is free to recommend any sentence within the statutory minimum and maximum penalties.

13.     If the government does not move the Court, pursuant to Sentencing Guideline § 5K1.1, to depart from the applicable Guideline range, as set forth above, the preceding paragraph of this Agreement will be inoperative, both parties shall be free to recommend any

13

sentence, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines, and the statutory minimum sentence. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Sentencing Guideline § 5K1.1 and 18 U.S.C. § 3553(e).

14.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above and subject to the statutory minimum penalty. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

15.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

16.     After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining count of the third superseding indictment, as well as preceding indictments in this case.

**Forfeiture**

17.     The third superseding indictment charges that defendant is liable to the United States for approximately $1,373,415,000, which funds are subject to forfeiture because those funds constitute proceeds of the violations alleged in Count One. By entry of a guilty plea

14

to Count One of the third superseding indictment, defendant does not contest that the property identified above is subject to forfeiture.

18.     Defendant does not contest the entry of a forfeiture judgment in the amount of $1,373,415,000, and against the property identified above, in that this property is subject to forfeiture. Prior to sentencing, defendant will not contest the entry of a preliminary order of forfeiture relinquishing any right of ownership he has in the above-described funds and further will not contest the seizure of these funds so that these funds may be disposed of according to law.

19.     Defendant understands that forfeiture of this property shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

20.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 09 CR 383.

21.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations

15

of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

22.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.     **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after

hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the third superseding indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

b. **Waiver of appellate and collateral rights**. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Sentencing Guideline § 5K1.1, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, in exchange for the concessions made by the United States in this Agreement. In addition, if the government makes a motion at sentencing for a downward departure pursuant to Sentencing Guideline § 5K1.1, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, and (in any case in which the term of imprisonment and fine are within the maximums provided by statute) his attorney's alleged failure or refusal to file a notice of appeal, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255.The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief,

has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

      c.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

23.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing, including the nature and extent of defendant's cooperation.

24.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence

for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

25.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

26.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

27.     Based on Defendant's complete and continuing cooperation, the government agrees to take all appropriate measures, in its sole discretion, to address any serious security concerns that might arise affecting the Defendant or his family as a result of his cooperation. Additionally, if the Defendant requests, and in the judgment of this Office the request is reasonable, this Office will recommend to other offices in the U.S. Government that the

Defendant and, if appropriate, his family members, be allowed to remain permanently in the United States through appropriate means. Defendant understands that this Office has authority only to recommend such a course of action and that the final decision whether to grant such relief rests within other offices of the Department of Justice and with other agencies of the U.S. government, which will make their independent decision in accordance with applicable law, policy, and procedures.

28.     Subject to paragraph 27 above, defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States.

## Conclusion

29.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person, subject to defense counsel's opportunity to seek that this Agreement be sealed or subject to a protective order.

30.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that

in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

31.    Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

32.    Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

33.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 4-3-13

GARY S. SHAPIRO
United States Attorney

VICENTE ZAMBADA-NIEBLA
Defendant

THOMAS D. SHAKESHAFT
Assistant U.S. Attorney

GEORGE SANTANGELO
Attorney for Defendant

MICHAEL J. FERRARA
Assistant U.S. Attorney

EDWARD PANZER
Attorney for Defendant

ALVIN MICHAELSON
Attorney for Defendant

FERNANDO X. GAXIOLA
Attorney for Defendant

23