PROCEEDINGS SEALED BY ORDER OF COURT

1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**
SEP 2 7 2019
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

```
UNITED STATES OF AMERICA,      )
                               )
              Plaintiff,       )
                               )   Case No. 09 CR 383-10,11
     -vs-                      )
                               )   Chicago, Illinois
                               )   August 27, 2019
PEDRO FLORES and MARGARITO     )   9:50 a.m.
FLORES,                        )
                               )
              Defendants.      )
```

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE RUBEN CASTILLO

APPEARANCES:

For the Government:    MS. ERIKA L. CSICSILA
                       MR. CHRISTOPHER PAUL HOTALING
                       Assistant United States Attorneys
                       219 S. Dearborn Street
                       Chicago, IL 60604
                       (312) 353-5300

For Defendant
Pedro Flores:          [REDACTED]

Court Reporter:

KATHLEEN M. FENNELL, CSR, RPR, RMR, FCRR
Official Court Reporter
United States District Court
219 South Dearborn Street, Suite 2504
Chicago, Illinois 60604
Telephone: (312) 435-5569
Kathleen_Fennell@ilnd.uscourts.gov

```
 1   APPEARANCES:  (Continued)
 2   For Defendant
     Margarito Flores:      [REDACTED]
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
                1        (Proceedings heard in open court:)
                2        THE CLERK:  09 CR 383, United States versus Pedro and
                3  Margarito Flores.
                4        MS. CSICSILA:  Good morning, Your Honor.
09:50:55        5        THE COURT:  Good morning.
                6        MS. CSICSILA:  Erika Csicsila and Chris Hotaling on
                7  behalf of the United States.
                8        MR. HOTALING:  Good morning, Your Honor.
                9        THE COURT:  Good morning.
09:51:01       10        [REDACTED]  Good morning, Judge.  [REDACTED] on
               11  behalf of Margarito Flores.
               12        [REDACTED]  Good morning, Your Honor.  [REDACTED]
               13  on behalf of Pedro Flores.
               14        THE COURT:  Okay.  It's a pretty unusual motion.
09:51:11       15  What is the government's reaction?
               16        MS. CSICSILA:  Judge, we believe the motion should be
               17  denied because, in essence, the motion asks for an order
               18  seeking relief based on post-sentencing cooperation, and the
               19  case law, Wade vs. United States, makes clear that that is
09:51:27       20  insufficient to have judicial intervention in Rule 35 context.
               21  So we would ask initially that the motion just be denied
               22  outright.
               23        THE COURT: Okay.
               24        MS. CSICSILA:  I have responses to the various facts
09:51:38       25  that are alleged in the motion, but, again, based on the case
```

1 law, I think it should be denied.
2 THE COURT: Essentially, it's the government's
3 position that I don't have the power to order the government
4 to do this.
5 MS. CSICSILA: Correct, not under the showing that's
6 been made by the defense. *Wade vs. United States* makes clear
7 that there has to be something in addition to just facts
8 setting forth that there was post-sentencing cooperation,
9 which, by the way, is contemplated by the plea agreement, and
10 I would direct the Court and the defense to Paragraph 31 of
11 the plea agreement.
12 That said, there must be a showing of improper motive
13 of some sort. The case law points to race-based motivations
14 or religious-based motivations, some sort of unconstitutional
15 motive that is just not present here, has not been alleged,
16 and so no hearing is warranted let alone relief.
17 THE COURT: Okay. Let me hear from the defense.
18 ▮▮▮▮▮▮▮▮ Judge, our position is that the response
19 given by the government as to why they would not pursue the
20 Rule 35 motion essentially was based on their claim that this
21 cooperation was covered by the plea agreement. We very
22 strongly disagree with that for the reasons set forth in
23 writing.
24 THE COURT: What about the plea agreement, wouldn't
25 that control?

```
09:53:19
```

1  ▇▇▇▇▇ Judge, the terms of the plea agreement,
2  specifically Paragraph 12, talk about their duty to cooperate
3  and the timing of their sentencing. They were told, as we
4  indicated in writing, that their cooperation was complete,
5  which triggered the sentencing event, which then occurred in
6  January of 2015.
7     The cooperation that followed occurs in 2017 and
8  2018, and we believe that it is truly post-sentencing
9  cooperation not covered within the terms of the agreement, and
10 it's our position that the bad faith on the part of the
11 government is based in their claim that this is covered by the
12 plea agreement, and we say that it is not.
13     MS. CSICSILA: And, Judge --
14     ▇▇▇▇▇ Judge, could I also add something?
15     THE COURT: Yes, ▇▇▇▇▇
16     ▇▇▇▇▇ We also added in our pleading the
17 concept of what I call mutual mistake. The heart of this
18 motion is that I believe, ▇▇▇▇▇ believes, our clients
19 believe, and the government apparently disagrees, that they
20 would not be sentenced until their cooperation is complete and
21 no one in their wildest imagination would have ever thought
22 that it was realistic that Mr. Guzman was going to be brought
23 back here. That's the nature of the mutual mistake,
24 regardless of the terms of the contract of the plea agreement,
25 which I think --

1   THE COURT: Do you think that mistake would have to
2   be mutual --
3   ▉   I think it is --
4   THE COURT: -- for your argument to be effective?
5   ▉   But I think it is a mutual mistake.
6   When the government -- it was the government that suggested
7   that we have the sentencing when we did because if you recall,
8   I think the range was 10 to --
9   ▉   16.
10  ▉   -- 10 to 16 years, and there was some
11  concern at the time with respect to, you know, if they got to
12  10 when they got out, and the government said we think their
13  cooperation is complete, and that's the only reason we went
14  along with it.
15      Now, we didn't disagree at the time because I
16  believed, just like I believe the evidence would show the
17  government believed, nobody thought that it was realistic that
18  this would occur, and it did occur.
19      So we think the question on the table is, and maybe
20  this -- and I think I hinted at this or suggested it in the
21  pleading, the real issue is, you know, would that have changed
22  your mind had you known that at the time? We think it might
23  have only in the sense that this is now a level of
24  dangerousness to them and their families --
25  THE COURT: Right.

1        ▮▮▮▮▮▮▮ -- that is significantly different.
2        THE COURT: Okay.
3        MS. CSICSILA: Judge --
4        THE COURT: Go ahead.
5        MS. CSICSILA: -- could I respond briefly?
6        THE COURT: Yes.
7        MS. CSICSILA: So I understand defense counsel is
8    pointing to Paragraph 12 of the plea agreement which talks
9    about the timing of the defendant's sentencing. That
10   paragraph reflects that the defendant agrees to postpone his
11   sentencing until the cooperation is completed. It doesn't say
12   anything about when the cooperation is in fact complete --
13       THE COURT: Right.
14       MS. CSICSILA: -- and I would direct the Court's
15   attention to Paragraph 31, which is on Page 25 of the plea
16   agreement, which says that "The defendant understands his
17   compliance with each part of this plea agreement extends
18   through the period of his sentence, and failure to abide by
19   any term of the agreement is a violation of the agreement."
20       So it's very clear in black and white that it was
21   contemplated that the defendant's cooperation would continue
22   throughout his sentence which he is still serving.
23       I would also just want to respond briefly to the
24   notion that it wasn't contemplated that the defendants would
25   continue to cooperate. It was very clear in public filings

1  and in the public sentencing that everyone, including the
2  defense and the defendant, understood that they would be
3  called upon to testify in the future.
4      In the government's sentencing memo, it states very
5  clearly: "To be clear, the government believes that the
6  Flores brothers are viable and credible witnesses, and the
7  government anticipates using them in the future."
8      There's also in the public proceedings at sentencing,
9  one of the defense attorneys on Page 5 of the transcript says:
10 "The ongoing nature of this process is such that these
11 gentlemen will be forever called upon, at least for probably a
12 great number of years, to continue to appear when necessary
13 and provide live testimony in the matters that they've already
14 been provided information on" -- excuse me -- "that they've
15 already provided information on."
16     And then there's also references in a sealed
17 proceeding, which I obviously won't detail on the record now
18 but I have a copy of the transcript for the Court and for
19 defense counsel, which makes the same point clear, that
20 testimony was anticipated going into the future.
21     And so, again, the government believes that on the
22 showing, on the filing itself and under Supreme Court case
23 law, this motion should be denied because there is no
24 unconstitutional motive that's been put forth by the defense
25 or alleged by the defense. The motion should be denied

outright. I'll hand the defense --

THE COURT: I agree the motion needs to be denied. I don't think I have jurisdiction to order the government to do this. I don't think there's been a sufficient showing. I don't think there's a mutual mistake. I mean, there was no question in my mind when I sentenced the Flores brothers that I knew that they might one day be testifying in the case of Mr. Guzman.

As I was first assigned this case and then went on to serve as Chief Judge for six years, certainly I became aware, as I think most people on the government's side, that they had not given up in any respect their search and quest to obtain the capture and successful extradition of Mr. Guzman. In fact, I call this case the gift that keeps giving because numerous defendants have been captured and extradited at various times since I was assigned this case way back maybe eight or nine years ago.

So defendants just keep coming, and I continue to have jurisdiction over them. But I think even if I were disposed in any way, which I'm not, to grant this motion, first of all, I think I would be pretty much instantly reversed by the Court of Appeals.

Second of all, the net result of it would be to bring these two gentlemen in front of me again for a potential resentencing, and I will tell you that each and every time

PROCEEDINGS SEALED BY ORDER OF COURT

10

1  I've sentenced a defendant in this case, I have made a final
2  conclusion as to what their culpability and their cooperation
3  should entitle them to in terms of the 3553 factors.
4      So for all those reasons, even though I applaud your
5  effort at creative lawyering on behalf of these two gentlemen,
6  I'm going to deny the motion.
7      MS. CSICSILA:  Thank you.
8      MR. HOTALING:  Thank you, Judge.
9      (Which were all the proceedings heard.)
10            CERTIFICATE
11  I certify that the foregoing is a correct transcript from
12  the record of proceedings in the above-entitled matter.
13  /s/Kathleen M. Fennell        September 9, 2019
14  _____      _____
    Kathleen M. Fennell                 Date
15  Official Court Reporter